IN THE UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF MISSOURI

EASTERN DIVISION

| | | |
|---|---|---|
| YEFIM BURSHTEYN and | ) | |
| | ) | |
| FAINA GERMAN, | ) | Cause No. |
| | ) | |
| Plaintiffs, | ) | |
| | ) | |
| vs. | ) | |
| | ) | |
| COMMUNITY HOUSING ASSOCIATION, INC. | ) | |
| | ) | |
| Serve at: | ) | |
| Joan Dennison, Registered Agent | ) | |
| 8 Millstone Drive, Suite 2000, | ) | |
| St. Louis, MO 63146, and | ) | |
| | ) | |
| COMMUNITY HOUSING MANAGEMENT | ) | |
| CORP., | ) | |
| | ) | |
| Serve at: | ) | |
| Joan Dennison, Registered Agent | ) | |
| 8 Millstone Drive, Suite 2000, | ) | |
| St. Louis, MO 63146, | ) | |
| | ) | |
| Defendants. | ) | |

_____

## COMPLAINT

COME NOW, Plaintiffs, YEFIM BURSHTEYN and FAINA GERMAN, and for their

complaint against Defendants, COMMUNITY HOUSING ASSOCIATION, INC., and

COMMUNITY HOUSING MANAGEMENT, CORP., state and allege as follows:

## NATURE OF ACTION

1. This action is brought pursuant to the provisions of Title VIII of the Civil Rights Act of

1968, as amended by the Fair Housing Act of 1988, 42 U.S.C. §§ 3601 through 3619 ("the Act").

2.      Plaintiffs allege that Defendants, in violation of the Fair Housing Act, codified to 42 U.S.C. 3601, engaged in discriminatory housing practices including acts that are unlawful under section 804, 805, 806, or 818 of this title.  Pursuant to Sec. 804, "As made applicable by section 803 of this title and except as exempted by sections 803(b) and 807 of this title, it shall be unlawful-- … (b)  To discriminate against any person in the terms, conditions, or privileges of sale or rental of a dwelling, or in the provision of services or facilities in connection therewith, because of race, color, religion, sex, familial status, or national origin."  Pursuant to Sec. 818, "It shall be unlawful to coerce, intimidate, threaten, or interfere with any person in the exercise or enjoyment of, or on account of his having exercised or enjoyed, or on account of his having aided or encouraged any other person in the exercise or enjoyment of, any right granted or protected by section 803, 804, 805, or 806 of this title.' *[Codified to 42 U.S.C. 3617]*

3. Plaintiffs allege that Defendants engaged in discrimination in the terms, conditions or privileges of rental; refusal to make reasonable accommodations in rules, policies, practices or services when such accommodations may be necessary to afford a person equal opportunity to enjoy a dwelling; and unlawful retaliation in the form of interference with the enjoyment of a dwelling on account of the exercise of protected rights, in violation of the Fair Housing Act, 42 U.S.C. §§ 3604(f)(1)(A), (f)(2)(A), (f)(3)(B) and 3617.

4. Plaintiffs allege that Defendants violated Section 109 of Title I of the Housing and Community Development Act of 1974 prohibits discrimination on the basis of race, color, national origin, sex or religion in programs and activities receiving financial assistance from HUD's Community Development and Block Grant Program.

5. Plaintiffs allege that Defendants violated Section 3617 of the HUD Act which makes it unlawful to "coerce, intimidate, threaten, or interfere with any person in the exercise or

enjoyment of, or on account of his having exercised or enjoyed, or on account of his having aided or encouraged any other person in the exercise or enjoyment of, any right granted' under § 3604 of the Act. Section 3604 makes it unlawful to refuse to rent a dwelling based on a person's national origin.

6.      Defendants failed to accommodate the Burshteyns and subjected them to disparate treatment under the Fair Housing Amendments Act, 42 U.S.C. §§ 3601, *et seq.*, which forbids discrimination against handicapped people in the rental of housing.  42 U.S.C. § 3604(f)(1).

## PARTIES

7.  Plaintiff YEFIM BURSHTEYN (also referred to as "Yefim") is over 21 years of age, resides in St. Louis County and for approximately thirteen years rents from Defendant, the COMMUNITY HOUSING ASSOCIATION, INC. (also known as the "Covenant House/CHAI Apartments"), Apartment J203 at 6 Millstone Campus Drive, St. Louis, Missouri 63146.

8.  SARA BURSHTEYN, wife of Plaintiff YEFIM BURSHTEYN, resided with him in Apartment J203 at 6 Millstone Campus Drive, St. Louis, Missouri 63146, until her death on June 11, 2017.  SARA and YEFIM BURSHTEYN are collectively referred to as "the Burshteyns."

9.  Plaintiff FAINA GERMAN is the daughter of Plaintiff YEFIM BURSHTEYN and SARA BURSHTEYN, over 21 years of age, who resides in St. Louis County, Missouri.

10. At all times relevant herein, Defendant COMMUNITY HOUSING ASSOCIATION, INC. is and was a Missouri not-for-profit corporation duly authorized to do business in the State of Missouri, and doing business in St. Louis County, Missouri.

11. At all times relevant hereto, Defendant COMMUNITY HOUSING ASSOCIATION,

INC. and/or "CHAI"  hired, and was managed by, and the Defendant COMMUNITY HOUSING MANAGEMENT CORPORATION which functions as its management company.

12. Defendant COMMUNITY HOUSING MANAGEMENT CORPORATION, *inter alia*, processes applications for apartments and makes tenants' eligibility determinations based on CHAI's tenant selection criteria, approved by HUD.

13. CHAI is one of the buildings managed by Community Housing Management Corporation with mobility-impaired units for which Plaintiff YEFIM BURSHTEYN and SARA BURSHTEYN were eligible.

14. Defendants' principal place of business is in St. Louis County, Missouri, and Defendants' registered agent is in the County of St. Louis, Missouri.

15. James Deutsch, Elisabeth Wallace, Richard Alport are the officers of the Defendant.

16.  Josh Corson, Scott Malin and James Deutsch are the directors of the Defendant.

17. Joan Denison is the Executive Director and Registered Agent of the Defendant.

18. Jacqueline Taylor is the manager of the Defendant.

19. Scott Jannings is Defendant's Facilities Director.

20. Jim Kern is a former Assistant Director no longer employed with the Defendant.

21. Tanya Lin is a social service provider and an interpreter for Defendants, who speaks

Russian and acts as a translator between Russian-speaking tenants and the Defendants.

22. At the time of events and occurrences herein, Lesia Schmiemeir and Lidiya Skilioti

worked as home care providers for the Burshteyns employed by Victor's Home Care, LLC. Lesia provided home care to Sara Burshteyn.  Lidiya provided home care to Yefim Burshteyn.

23. After Sara died, Lesia Schmiemeir no longer works for Victor's Home Care, LLC.

Lidiya Skilioti works for Victor's Home Care, LLC as home care provider to Yefim.

24. Larisa Shenkman works as a nurse for the Burshteyns through Victor's Home Care.

25. Yelena Davydenko is the director and owner of Victor's Home Care, LLC.

worked as home care providers for the Burshteyns employed by Victor's Home Care, LLC.

## JURISDICTION

26. All events and occurrences described herein took place in the County of St.

Louis, Missouri.

27.     This Court has jurisdiction over the claims herein under Section 804 of the FHA,

42 U.S.C. §§ 3601, *et seq.*, Section 818 of the FHA, 42 U.S.C. § 3617, *et. seq.,* 42 U.S.C. §

3604(f)(1) which forbids discrimination against disabled people in the rental of housing, refusal

to accommodate and disparate treatment under the Fair Housing Amendments Act, 42 U.S.C. §§

3601, *et seq.*, and because the Court has supplemental jurisdiction over the anxilary claims in the

law and equity arising from Defendants' acts and omissions in the State of Missouri.

## GENERAL ALLEGATIONS

28.   Defendants are responsible for renting and maintaining the building, including units

and common areas of the premises which include Apartment J203 located at 6 Millstone Campus

Drive, St. Louis, Missouri 63146.

29.   On or about March 2015 Jim Kern came to the door of Apartment J203 purportedly

hand-delivering a letter to the Burshteyns.  Mr. Kern knocked on the door. Yefim came to the

5

door to open it.  As Yefim leaned to pick up the letter Mr. Kern was sliding under the door, Mr.

Kern forcefully pushed the door open, knocking Yefim off his feet. Yefim fell onto the floor, his

feet slid into the wooden door of the closet near the entrance, causing the door to break and

Yefim's toes to fracture as a direct result of Mr. Kern pushing his body by the entrance door.

30.     Yefim suffered broken toes, strained muscles and ligaments, contusion and

bruises to the soft tissues and other ailment and impairments, had to undergo treatment, wear a

boot, and still suffers pain and limitations as a result of the fall and broken toe bones.

31.     Defendant demanded that the Burshteyns pay to repair the broken closet door.

32.     The Burshteyns paid the invoice for repairs of the closet door broken by Jim Kern

pushing Yefim Burshteyn into the closet door.

33.     Defendants have a provision in the Lease agreement whereby three lease violations

in one year may result in eviction of the tenant(s).

34. Plaintiff Yefim Burshteyn and Sara Burshteyn were previously sued by Defendant for

eviction in Cause No. 15SL-AC 17384 and No. 15SL-AC 17384-01 in St. Louis County.

35.     On January 3, 2017, Defendant dismissed Cause No. No. 15SL-AC 173840-01

without prejudice, and Defendant did not refile its cause within one year of said dismissal.

36.     Tanya Lin being as social services provider neglected the Burshteyns and made

errors in the social security administration paperwork of the Burshteyns.

37.     Tanya Lin threatened Yefim Burshteyn with physical harm by stating to him: "I

will give you heart attack or worse."

38.     Yefim Burshteyn reported said threats by Tanya Lin to Defendant's management.

39.     Defendant did nothing to investigate and deter said conduct of Tanya Lin.

40.     The Burshteyns lacked the English skills but distrusted Tanya Lin.

41.     Faina German repeatedly requested the Defendants to contact her whenever any issues arise with her parents, for translations and for facilitation of communications.

42.     On or about April 10, 2017, Sara started to itch, and in the days following developed rush on her body.

43.     Sara had diabetes and other illnesses, was less mobile that Yefim and spent most of time laying in her bed.

44.     Prior to the bed bugs infestation, Sara's health was improving, she was doing physical therapy, becoming more active and healthier.

45.     When Sara developed rush, was itching and had marks that looked like insect bites, the Burshteyns who lack the English skills and distrusted Tanya Lin appointed their home care providers, Lesia Schmiemeier and Lidiya Skilioti, to translate and report these occurrences to the management (Jacqueline Taylor, Scott Jannings) and requested to check for bed bug.

46.     Scott Jannings, the Facilities Director, came to the Burshteyns' apartment, looked at Sara's bed using a flashlight, stated that he saw no bed bugs, and promised to follow up.

47.     Victor's Home Care providers and nurse Shenkman reported Sara's rush, possible bed bugs and requests to the management in the business records of Victor's Home Care, LLC.

48.     In the weeks following, Sara's rush, itching and skin infections worsened.  Sara Burshteyn had multiple doctor's visits about rush, including on April 17, 2017, with "very itchy, red, indurated rash that covered her entire body," "smooth, slightly elevated plaques located

7

throughout her body, extremely itchy;" "was unable to sleep due to the extreme itch of the rash."

49.     The Burshteyns' sleep was disrupted for over a month because they were in constant discomfort, especially Sara, in pain, itching and scratching herself from bed bug bites.

50.     Furthermore, around same time an electric outlet on the wall immediately next to Sara's bed was missing a protective plastic cover.

51. Scott Jannings noticed said electric outlet with no protective cover on April 10, 2017.

52. As of May 12, 2017, the electric outlet was still exposed, missing a protective cover.

53.     Scott Jannings and Tanya Lin stated that the two home care providers, Lesia Schmiemeier and Lidiya Skilioti, could have brought bed bugs into the Burshteyns' apartment from other apartments in the CHAI building where they may have been providing home care.

54.     Unbethknown to Scott Jennings and Tanya Lin, Lesia Schmiemeier and Lidiya Skilioti provided home care to the Burshteyns only and to no other persons.

55.   When Lesia Schmiemeier and Lidiya Skilioti, home care providers, contacted the Defendants for the Burshteyns, the management harshly prohibited them from contacting the Defendants' office, stating that same is beyond the scope of their duties as home care providers.

56.     Lidiya Skilioti continued to attempt to translate the Burshteyns' pleas for helps to the Defendants' office, and she was forbidden to enter said office.

57.   Lidiya Skilioti called the police because she believed she was being denied access to her workplace, that Defendant was interfering with her appointment as a translator for the Burshteyn, that she as their agent had a duty to report to the office their concerns with bed bugs.

58.   The Defendants contacted Victor's Home Care, LLC and demanded that they

terminate Lidiya Skilioti's employment for passing requests for the Burshteyns to the office.

59. Victor's Home Care, LLC did not terminate employment of Lidiya Skilioti.

60. Yefim was suffering from bed bugs himself and from looking at Sara's suffering and pain for over a month and mentally suffered with her.

61.     Faina German also continued to contact the office herself for the Burshteyns and appointed the home care providers to contact the Defendants requesting help with bed bugs.

62.     The Burshteyns suffered mentally and physically due to bed bugs bites.

63.     Sara Burshteyn was admitted to emergency room, from where she was transferred to the allergic center because medical team initially assumed she had allergies.

64.     Sara Burshteyn was prescribed medications for allergies, which was not helping.

65.     Sara who stayed in bed begged Yefim, Faina and home care providers to help her.

66.     Everyone involved who could speak English for the Burshteyns (Lesia, Lidiya, Larisa Schenkerman and Faina German) contacted the Defendants at various times for several weeks communicating that the Burshteyns are seeking help with bed bugs.

67.     Both Sara and Yefim Burshteyns are Holocaust survivors who survived World War II in a ghetto and were formally awarded a status of the World War II veterans.

68.     In early days of May 2017, Lesia and Lidiya witnessed accumulation of bed bugs on the wall and ceiling near Sara's bed in the living room, some bed bugs being full of blood.

69.     Lesia and Lidiya gathered bed bugs into a glass jar with a tight metallic lid.

70.    The Burshteyns continued to enlist assistance of their home care providers to

translate their pleas to the Defendants' management.

71.   Specifically, Lidiya Skilioti continued to contact the Defendants' management with increased intensity translating the Burshteyns' pleas for help with the treatment of bed bugs and accommodations for the Burshteyns while the treatment is being arranged.

72.   The Defendants' management was not responsive to said pleas and demanded that Skilioti not come to the office or contact the office.

73.   May 9, 2017, is traditionally celebrated as WWII Victory Day and a Veteran's Day in the community of the immigrants from the former Soviet Union.

74.   On May 8, 2017, on the eve of this V-Day holiday, the issues with bed bugs, clearly visible and undeniably discovered, and electric outlet problems remained not resolved.

75.    Holocaust survivors have certain psychological traits, one of which is being very supportive of other survivors.

76.    Yefim Burshteyn felt that had no alternative but to contact the office or seek Tanya Lin to contact the Defendants to arrange bed bug treatment to save his and Sara's health and life.

77.    When the Burshteyn did not get any response to their complaints communicated for them by the English speakers, even after bed bugs were found and confirmed in the apartment, Plaintiff Yefim Burshteyn called Tanya Lin and left a broken emotional voicemail.

78.   In his phone message, upset Yefim was making a point that he and Sara needed help.

79.   Tanya Lin translated Yefim's voicemail left to her on May 8, 2017, as threatening and reported to the Defendants that Yefim was threatening and intimidating her in his message.

80.   Yefim spoke in broken sentences, making the plea that he was calling for his wife, that his

patience was wearing thin, that he was getting to his boundary, and that he did not know what to do.

81.  Yefim predicted that Tanya would say that he was threatening and intimidating her.

82.  On May 9, 2017, traditionally celebrated as V-Day honoring WWII veterans, Defendants usually congratulate tenants who are World War veterans and/or Holocaust survivors and hold activities for tenants to celebrate the Victory and the veterans.

83.  Neither Yefim nor Sara Burshteyn were congratulated by the Defendants or invited nor included in any activities available to other tenants and WWII veterans. Instead, Yefim Burshteyn, a WWII veteran, was demanded to walk out of his apartment into the hallway, where a policeman was present, and management had him questioned by the police officer in view and within hearing of other CHAI tenants and invitees who could hear what transpired.

84. Even though Faina German previously repeatedly requested to be contacted in case of any issues with her parents, Faina German was not contacted on May 9, 2017.

85.  Yelena Davydenko, the owner of Victor's Home Care, LLC, was present, and being a native Russian speaker listened to Yefim's voicemail and found that it was not a threat.

86.  Alena Davydenko made entries in the business records of Victor's Home Care about her listening to Yefim's voicemail to Tanya Lin and finding that it was not a threat.

87.   Reasonable accommodations were necessary to allow the Burshteyns as disabled persons to have the same opportunities as a non-disabled person.

88.  Yefim Burshteyn suffers from a number of physical impairments and disabling medical conditions, including major anxiety and depressive disorder, kidney decease, and was using the oxygen tank prescribed to him.  On many occasions, including on June 27, 2015, Defendants were provided with letters from Yefim's doctor, Galina Rivkin, M.D., wherein Defendants were advised that Yefim "is known to have several disabling medical conditions,…

11

is limited in his ability to ambulate and conduct certain activities of daily living,… has had Depression and Anxiety which further impair his daily functioning,… is disabled and required professional assistance in his home, such as skilled nursing, special accommodations through a social worker, home aid."

89.    Sara Burshteyn had anxiety, arthritis, asthma, dementia, chronic major depressive disorder, dyabetes, disorder of lipid metabolism, GERD, osteoporosis, pacemaker since 2009, syncope and collapse, hypertension, late onset Alzheimer's disease without behavioral disturbance, shortness of breath, chronic kidney disease stage 3, and other ailments.

90.   In April and first half of May 2017, Sara had a series of visits to doctor for her rash, itching, pain and discomfort caused by bed bug bites which was initially looked at as allergy.

91.   After  home care providers discovered bed bugs, the allergy center contacted the management of the Defendants and requested to take measures and to accommodate Burshteyns.

92.   On her visit to Mercy Hospital on St Louis on May 11, 2017, after discovery of bed bugs but before extermination scheduled on May 16, 2017, Sara's medical records documented allergies, hives and swelling.

93.   At the meeting with Defendant's management on May 12, 2017, the Burshteyns through Faina German inquired about, and requested accommodations for the Burshteyns, both temporary (before and during the bed bugs extermination) and permanent, after the extermination at the existing apartments at the Community Housing Association, Inc. (CHAI).

94.   The Burshteyns were refused both temporary and permanent accommodations at the existing CHAI apartments, even though the management admitted to accommodating at least one tenant by moving his or her to another apartment within the existing CHAI apartment complex.

95.     The Burshteyns qualified for temporary and permanent accommodations. Defendant took or failed to take actions to accommodate the Burshteyns because of Sara Burshteyn's and Yefim Burshteyn's disability.  See generally Neudecker v. Boisclair Corp. 351 F.3d 361 (8th Cir. 2003).

97.     Subsequently, Yefim Burshteyn applied for an apartment at the new Community Housing Association, Inc. (CHAI).  His application was taken but he was never informed about any action taken by the management on his application as of the date of this filing.

98.     Other applicants, including but not limited to Mother of Tanya Lin, moved to new apartments before Yefim Burshteyn.

99.     At the meeting on May 12, 2017, Plaintiff Faina German requested the management to address comprehensively all outstanding issues with her parents.  The Defendants failed to advise German that Yefim's voicemail on May 8, 2017, is deemed a lease violation, and failed to provide any notice of any alleged violation to Faina German for translation to the Burshteyns.

99.     On May 18, 2017, Sara Burshteyn was admitted to hospital where she stayed until her death on June 11, 2017.  Yefim Burshteyn was spending significant time by her side at ICU.

100.     On May 31, 2017, the Defendants delivered two Notices of Lease Violations to the Burshteyns, one for Yefim allegedly threatening Tamia Lin, and one for Yefim allegedly not wearing shirt in a hallway outside of his apartment.

101.     Both allegations of Lease Violations were unsupported or controverted by an independent source, such as Alena Davydenko translating Yefim's voicemail as not a threat.

102.     On information and belief, the Defendants utilized Tanya Lin to translate said Notices of Lease Violations.  Tanya Lin failed or refused to recuse herself, and Defendants failed or refused to obtain an independent translator to translate said Notices of the Lease Violations.

103.     Defendants knew that said Notices delivered directly to Yefim would cause him severe distress and harm his health, from the letters of Yefim's doctor and from the fact that Yefim at that time was spending second week by Sara's bedside at ICU.  To prevent expected harm to Yefim's health, Plaintiff Faina German contacted Defendant's office and asked not to deal with Yefim directly at that time, and police was contacted to prevent any harm.

104. The Burshteyns disputed the Notices of alleged Violations and asked for information in support of Defendant's allegations. Defendants provided no further support of the allegations of lease violations.

105.     On numerous occasions, representatives of Defendant walked into the Apartment J203 at 6 Millstone Campus Drive rented by the Burshteyns without a notice or appointment, uninvited, including while Yefim walked out and was away after Sara's death and came back to discover Scott Jannings inside his apartment. During one or more of said visits, the glass jar with metal lid containing the bed bugs saved as an evidence for tests and experts disappeared, and the walls with Sara's blood visible on them from squashed bed bugs were painted over.

106.     Defendants knew that Sara died but failed or refused to express condolences as Defendants express to families of other tenants who passed away.

107.     Plaintiffs retained the undersigned attorneys who requested Defendants not to communicate directly with Yefim.  Defendant Faina German repeatedly requested that all communications with Yefim Burshteyn should be arranged through her or through their attorney.

108.    Defendants continued to communicate with Yefim Burshteyn directly.

109.    In November 2017, husband of Plaintiff Faina German was in Yefim's apartment with two hired movers to arrange for Sara's old bed to be removed and a new bed brought in.

110.    Scott Jannings came in without an appointment, like on many occasions before, and for a long time was looking at the old Sara's bed and mattress about to be removed, for a much longer time than he sent looking for bed bugs on April 10, 2017.

111.    Scott Jannings did not express anything to Yefim in presence of Faina's husband or to Faina through her husband to translate for Yefim.

112.    After the bed was replaced and the old bed was put in a large dumpster where other CHAI residents are allowed to dump large objects, Faina's husband and the movers left.

113.    Only after they left, Scott Jannings returned and demanded that Yefim should immediately pay for leaving the old bed in the dumpster, as other tenants routinely do.

114.    Before or during Mr. Jannings making said demand, Yefim was not afforded an opportunity to have Faina German present, in person or on the phone, to assist him.

115.    Husband of Plaintiff Faina German returned thereafter, and removed the old bed from the dumpster and hauled it away, at additional expense because the movers were dismissed.

116.    Defendants failed or refused to make the Burshteyns, Plaintiff Yefim Burshteyn and Plaintiff Faina German whole

117.    Plaintiffs reported Defendants' conduct to the HUD for investigation.

## COUNT I. BURSHTEYN AGAINST DEFENDANTS – DISCRIMINATORY TREATMENT IN TERMS AND CONDITIONS IN VIOLATION OF ACT' SEC. 804(B)

118.   Plaintiffs incorporates paragraphs 1 through 117 as if fully stated herein.

119.   Defendants engaged in discrimination of Plaintiff Yefim Burshteyn and Sara Burshteyn in the terms, conditions, or privileges of the rental of dwellings because of national origin and familial status, in violation of Section 804(b) of the FHA, 42 U.S.C. § 3604(b).

120.   Defendant subjected Plaintiff Yefim Burshteyn and Sara Burshteyn to national origin discrimination by affording them different treatment in housing because of their ancestry, ethnicity, birthplace, culture, and/or language.

121.   The national origin of the Burshteyns manifested *inter alia* in their inability to speak or understand English was the motivating factor in their discrimination by Defendants.

122.   Whereas the apartment's physical condition issues required communications and contact with the office of the Defendant, there was a language barrier due to Burshteyn's lack of the English skills.

123.   The Defendants have resources to accommodate the Burshteyns.

124.   The Defendants were required to investigate the situations with Tanya Lin, and Tanya Lin was required to recuse herself due to her prior conflicts.

126.   The Burshteyns who lacked English skills requested home care providers Lesia Schmiemeier, Lidiya Skilioti and Plaintiff Faina German to communicate with the Defendants.

127.   The HUD Act entitles the Plaintiffs to appoint their own interpreters.

128.   Defendants ignored or barred the Burshteyns' agents appointed for interpretations.

16

129.    Defendants failed to provide to Plaintiff Yefim Burshteyn and Sara Burshteyn the same level of service and/or housing amenities as they provide to other tenants, including in making a proper and timely inspection, timely remedying the electric outlet hazard, and promptly arranging for bed bug treatment, including them in activities and providing to the Burshteyns services available to other tenants, because the Burshteyns were born in another country and because of their native language not being the English language.

130.    As a direct and proximate result of Defendant's actions or inactions, Plaintiffs incurred losses and damages, pain and suffering, incurred detriment, expenses and legal fees.

WHEREFORE, Plaintiffs prays judgment against Defendants, in an amount in excess of TWENTY-FIVE THOUSAND DOLLARS ($25,000) which is fair and reasonable under the facts and circumstances, pre-judgment and post-judgment interest at the statutory rate of 9%, legal fees, costs and such further relief as the Court may deem just and proper.

## COUNT II. BURSHTEYN AGAINST DEFENDANTS - BREACH OF LEASE AGREEMENTS AND DENIAL OF APPLICATION OPPORTUNITIES

131.    Plaintiffs incorporates paragraphs 1 through 130 as if fully stated herein.

132.    On various dates, including on May 12, 2017, Plaintiff Burshteyn and Sara Burshteyn through Plaintiff German inquired about applying for another apartment at the Community Housing Association, Inc. (CHAI).  Plaintiff Burshteyn was told through Plaintiff German that there was only one instance when a tenant was moved to another apartment at the Community Housing Association, Inc. (CHAI).

133.    On information and belief, Defendants were untruthful in their response to the Burshteyns and German.

134.    There is an application process for new apartments at the Defendants' houses.

135.    CHAI is one of the buildings managed by Defendant Community Housing Management Corporation with mobility-impaired units.

136.    The Burshteyns were disabled senior persons.  Yefim Burshteyn is disabled.

137.    Plaintiff Yefim Burshteyn and Sara Burshteyn were eligible for an apartment with mobility-impaired units in the buildings managed by Defendants.

138.    At various times, Plaintiff Burshteyn sought to apply for a new apartment at CHAI.  However, when Burshteyn(s) were interested and willing to apply, they were not offered or denied that opportunity based on their national origin and due to their language limitations.

139.    As a direct and proximate result of Defendant's actions or inactions, Plaintiffs incurred losses and damages, pain and suffering, incurred detriment, expenses and legal fees.

WHEREFORE, Plaintiffs prays judgment against Defendants, in an amount in excess of TWENTY-FIVE THOUSAND DOLLARS ($25,000) which is fair and reasonable under the facts and circumstances, pre-judgment and post-judgment interest at the statutory rate of 9%, legal fees, costs and such further relief as the Court may deem just and proper.

## COUNT III. BURSHTEYN AND GERMAN AGAINST DEFENDANTS – COERSION, INTIMIDATION AND RETALIATION IN VIOLATION OF ACT' SEC. 818

. 140.  Plaintiffs incorporate paragraphs 1 through 139 as if fully stated herein.

141.    Section 3617 of the HUD Act makes it unlawful to "coerce, intimidate, threaten, or interfere with any person in the exercise or enjoyment of, or on account of his having exercised or enjoyed, or on account of his having aided or encouraged any other person in the exercise or enjoyment of, any right granted' under § 3604 of the Act." [Emphasis added].

18

142.    Defendants' conduct toward Yefim and Sara Burshteyn and the persons they appointed as their agents for interpreting and communications with the Defendants, as described herein, was sufficiently severe or pervasive to have the effect of imposing different terms, conditions, or privileges of their housing and interfering with their enjoyment of housing.

143.By operation of law, bringing up the allegations Defendant made within Cause No. 15SL-AC 173840-01 after its dismissal by Defendant would constitute malicious prosecution.

144.  Burshteyns successfully completed probation in Cause No. 15SL-AC 173840.

145.  Yet, after the Burshteyn's probation ended, the Defendants continued to demand that the Burshteyns should agree to continue to comply with the monitoring of their activities by the home care providers and other restrictions no longer required of them.

146.  In these and other respects, Defendant's conduct toward Yefim and Sara Burshteyn, Plaintiff Faina German and other their appointed agents, was sufficiently severe or pervasive to have the effect of imposing different terms, conditions, or privileges of their housing and interfering with their enjoyment of housing and coercion, intimidation, threats, or interference with persons in the exercise or enjoyment of, or on account of their having exercised or enjoyed, their rights under Sec. 804 of the FHA, in violation of Sec. 818 of the FHA, 42 U.S.C. § 3617.

147.    As a direct and proximate result of Defendant's actions or inactions, Plaintiffs incurred losses and damages, pain and suffering, incurred detriment, expenses and legal fees.

WHEREFORE, Plaintiffs prays judgment against Defendants, in an amount in excess of TWENTY-FIVE THOUSAND DOLLARS ($25,000) which is fair and reasonable under the facts and circumstances, pre-judgment and post-judgment interest at the statutory rate of 9%, legal fees, costs and such further relief as the Court may deem just and proper.

## COUNT IV. BURSHTEYN AGAINST DEFENDANTS – DISABILITY DISCRIMINATION AND DENIAL OF REQUESTS FOR ACCOMMODATIONS

148. Plaintiffs incorporate paragraphs 1 through 147 as if fully stated herein.

149. In acting or failing to act as described herein, Defendants violated the provisions against disparate treatment and failed to accommodate under the Fair Housing Amendments Act of 1988, 42 U.S.C. §§ 3601, *et seq.*, which forbids discrimination against handicapped people in the sale or rental of housing.  42 U.S.C. § 3604(f)(1).

150. Defendant provided no legitimate non-discriminatory reason for their discriminatory actions and/or reasonable inference could be drawn that any purportedly legitimate non-discriminatory reason was a pretext for discrimination.

151.   Sara Burshteyn and Yefim Burshteyn are disabled senior persons.

152.   The accommodation were necessary because of their disability during the period when there were bed bugs in their apartment.

153.   Defendants subjected Sara Burshteyn and Yefim Burshteyn to disability discrimination under the Fair Housing Act, the Americans with Disabilities Act, the Rehabilitation Act, and/or the Age Discrimination Act.

154.   On various dates, including on May 12, 2017, Plaintiff Burshteyn through Plaintiff German inquired about moving to another apartment at the Community Housing Association, Inc. Plaintiff Burshteyn was told through Plaintiff German that there was only one instance when a tenant was moved to another apartment at the Community Housing Association, Inc. (CHAI).

155.  Defendants were untruthful in their response to Burshteyn.  There was an application process for new apartments at the Community Housing Association.

156.   On information and belief, Defendant had apartments available that had been modified for persons with mobility impairments

157.    On information and belief, Defendant also had apartments available to temporarily move Burshteyns for several days after the bed bugs were discovered but before extermination scheduled on May 16, 2017, were to take place.

158.    At other times, Plaintiff Burshteyn sought to apply for a new apartment at CHA. However, when Burshteyns were interested and willing to apply, they were never offered that opportunity based on their national origin and due to their language limitations.

159.    Defendants' conduct as described herein, did not encompass the reasonable accommodation requirement of the Housing Act for persons with mental and physical disabilities.

WHEREFORE, Plaintiffs prays judgment against Defendants, in an amount in excess of TWENTY-FIVE THOUSAND DOLLARS ($25,000) which is fair and reasonable under the facts and circumstances, pre-judgment and post-judgment interest at the statutory rate of 9%, legal fees, costs and such further relief as the Court may deem just and proper.

### .COUNT V.  BURSHTEYN AGAINST DEFENDANT – NEGLIGENCE

160.Plaintiffs incorporates paragraphs 1 through 159 as if fully stated herein.

161.  At all times mentioned herein, Defendants and Defendants' employees and agents had a duty to keep the common areas of this building safe for the persons residing on the premises such as Plaintiff Yefim Burshteyn and to exercise ordinary care in dealing with tenants.

162.    In March 2015, as Plaintiff Yefim Burshteyn was attempting to pick up the letter Jim Kern was sliding under his entrance door, Jim Kern pushed the door open onto Plaintiff causing Yefim Burshteyn to slip and fall on the floor in her unit near entrance, and legs of Yefim Burshteyn were pushed by Jim Kern and flew into the wooden closet door, causing the door and

Plaintiff's leg break and him to fall down, striking forcefully against the closet door and against the floor, with leg fracture, contusions to multiple body parts, swelling, bruises, injuries to his ankle and his knee, and causing Plaintiff Burshteyn to sustain permanent, serious and painful injuries and damages as hereinafter set out.

163.     At the time of Plaintiff's injury, as aforesaid, Jim Kern was sliding the letter under the door and knocking on the door, so that it was reasonable to expect that tenant(s) inside would come to the door and lean to pick up the letter from the floor near the entrance behind the door.

164.     As a result, it was not reasonably safe for Jim Kern to push the door onto Plaintiff.

165.     Prior to Jim Kern sliding the letter under the door and pushing the door open, Sara and her home care taker were sitting in the corridor near the Burshteyns' door, and the home care provider inquired where Ji Kern was going and offered to deliver the letter to Yefim Burshteyn when she and Sara would go back into the apartment, but Jim Kern declined.

166.     The occurrence in March 2015 was the direct and proximate result of the carelessness and negligence of Defendants and their agent Jim Kern in failing to exercise ordinary care in the following respects:

(a) Defendants allowed Jim Kern to push the door in at the entry to Plaintiff's apartment while sliding the letter under the door, making same a hazard for its tenants inside;

(b) Defendants failed to warn that Jim Kern failed to exercise reasonable care and would push the door onto Yefim Burshteyn;

(c) Defendant failed to remedy the losses and damages to the Burshteyn due to Defendant's failure to exercise reasonable care and demands to pay for the door repairs; and

(d) Defendants failed to reimburse the Burshteyns for their losses and damages.

167.     Defendants had a duty and a reasonable ability to make the affected areas safe.

168.     Defendant failed to use ordinary care to refrain from forcefully pushing the door onto Yefim Burshteyn, and failed to otherwise remedy their failure to use ordinary care.

169.     Defendants, by using ordinary care, by and through its agent and employee Kern, could have known of pushing the door into a tenant in these circumstances to be unsafe, could have avoided this occurrence by delivering the letter to Sara Burshteyn sitting outside the door.

170.     Defendants had control over the conditions that caused the push and fall.

171.     Defendant's failed to take reasonable steps to avoid an action that caused Yefim Burshteyn's fall injury, and a serious injury was the foreseeable consequence of Defendants' breach of their duty of care.

.      172.     Defendants and their agents negligently performed their duties.

173.     Plaintiff Yefim Burshteyn sustained bodily injuries,  was taken into the doctor's care, underwent bondage put on his leg, had to wear boot, was treated and prescribed pain medications.  Plaintiff has to subsequently have treatments and doctor's visits.

174.     Plaintiff Yefim Burshteyn incurred severe pain and discomfort in the affected areas, including his leg, back, ankle and knee, sustained bruising and sprained areas, was required to limit the use of his injured leg, and has been given a boot which he was required to wear.to prevent the leg  from moving and support the joint while it heels.

175.     As a result of sustained injuries, pain and restrictions on his movements, Plaintiff Yefim Burshteyn had to reduce his activities and at certain times was unable to walk, all directly attributable to his injuries.

176.     Since the accident, Plaintiff continued to, and is expected to further experience,

pain and limitations in the affected areas.

177.    Defendant's negligence was the direct and proximate cause of Plaintiff's injuries.

178.    Plaintiff was, thereby, damaged in the following respects.

179.    As a direct and proximate result of Defendant's actions or inactions as described above, Plaintiff sustained the following injuries and damages: Plaintiff has lost the unfettered use of limb to the extent he was able to use it before the accident, suffered from prolonged periods of pain and discomfort, incurred pain and swelling of his leg, head and back, incurred time and medical expenses associated with procedures and the costs of future upkeep after his injuries.

180.    Plaintiff incurred reasonable charges for his medical visits, and needs to be reimbursed for the cost of his medical care and for the payments the Burshteyns were demanded to make to repair the door.

181.    Plaintiff  Yefim Burshteyn will require further upkeep, and needs to be reimbursed for the cost of same.

182.    Plaintiff Yefim Burshteyn made demand for reimbursement for the door repairs payments.  Plaintiff's demand was refused and denied by Defendants.

183.   As a direct result of the aforesaid failure of the Defendants, by and through their agents and employees, Plaintiff Yefim Burshteyn was caused to slip, and sustain serious and permanent injuries; he sustained a serious strains, sprains and contusions, and as a result of these injuries he received treatment and necessary follow up medical evaluations and treatment with medical doctors, and he will be required to submit for future medical evaluations and may require future medical treatment; he has been caused to suffer with severe pain in the future; he

has been caused to incur medical expenses and may be caused to incur medical expenses in the future in an amount not yet determined.

184.  At all times mentioned herein, Defendant had a duty to provide social services and translations for the senior persons of foreign origin residing on the premises such as Plaintiff Yefim Burshteyn and Sara Burshteyn.

185.   Prior to the events and occurrences with bed bugs, Plaintiff Yefim Burshteyn complained to Defendant about failure of Tanya Lin to translate for him accurately and for her failure to provide social service duties within the standard for social service providers.

186.   The events and occurrences described herein, were the direct and proximate result of the carelessness and negligence of Defendants and their agents in failing to exercise ordinary care in the following respects:

(a) Defendants allowed incorrect translations by Tanya Lin, known to Defendant to be inaccurate, including from the fact that at the meeting on May 12, 2017, Tanya Lin stated that Yelena Davydenko heard Yefim's voicemail and found it threatening but in fact Davydenko heard it, found it not threatening, and made a business record of same in the records of Victor's Home Care, Inc.;

(b) Defendant allowed accumulation of bed bugs at the units to become a health hazard for the tenants and visitors;

(b) Defendant failed to warn about bed bugs and failed to treat bed bugs in a prompt manner;

(c) Defendant failed to cause the exposed outlet next to Sara's bed in the Burshteyns' apartment covered for over one month, creating health and fire hazard for tenants; and

(d) Defendant failed to secure the accommodations for the Burshteyns.

187.    Defendant had a duty to maintain the common elements, to promptly treat bed bugs, keep electric outlets safe, and had reasonable ability to make the affected areas safe.

188.    Defendant failed to use ordinary care in all the above respects, failed to promptly inspect and treat bed bugs, to repair the electric outlet, and failed to otherwise remedy its failure to use ordinary care.

189.    Defendant knew or by using ordinary care, by and through its agents and employees, could have known of said unsafe conditions, could have inspected, repaired and treated the units, and otherwise preformed their duty to maintain the unit and common areas.

190.    Defendant had control over the conditions that caused the bed bugs and exposed electric outlet; and inspections, treatment and repairs were not unreasonably expensive or difficult;

191. Defendants failed to take reasonable steps to avoid the prolonged accumulation of bed bugs that caused Sara Burshteyn's and Plaintiff's prolonged suffering and injuries, and a serious physical and emotional injury to Plaintiff Burshteyn was the foreseeable consequence of Defendants' breach of its duty of care.

.    192.    Defendants and their agents negligently performed their duties.

193.    As a result of sustained injuries, pain and ailments, health of Sara Burshteyn was affected, she was admitted to hospital on May 18, 2017, and died on June 16, 2017.

194.    During and since the events and occurrences described herein, Plaintiff Yefim Burshteyn continued to, and is expected to further experience, pain and suffering.

195.    Defendants' negligence was the direct and proximate cause of Plaintiff's injuries.

26

196.     Plaintiff incurred reasonable charges for his medical visits, and needs to be reimbursed for the cost of his medical care. Plaintiff will require further upkeep, and needs to be reimbursed for the cost of same.

WHEREFORE, Plaintiffs prays judgment against Defendants, in an amount in excess of TWENTY-FIVE THOUSAND DOLLARS ($25,000) which is fair and reasonable under the facts and circumstances, pre-judgment and post-judgment interest at the statutory rate of 9%, legal fees, costs and such further relief as the Court may deem just and proper.

### .COUNT VI. PLAINTIFF BURSHETYN AGAINST DEFENDANTS – BREACH OF COVENANT OF INHABITABIITY

197.     Plaintiffs incorporates paragraphs 1 through 196 as if fully stated herein.

198.     Defendants breached the warranty of habitability by virtue of the following:

(a) Plaintiff Yefim Burshteyn and Sara Burshteyn entered into a lease for residential property;

(b) the subsequent development of dangerous or unsanitary conditions on the premises, including but not limited to bed bugs and uncovered electric outlet, which materially affected the life, health and safety of the tenants;

(c) reasonable notice of the defects was provided to the Defendant landlord; and

(d) Defendants subsequently failure to restore the premises to habitability in a timely and adequate manner.

199.     The implied warranty of habitability holds that landlords in residential lease contracts impliedly represent to their tenants that "the dwelling is habitable and fit for living at the inception of the term and that it will remain so during the entire term." Detling v. Edelbrock, 671 S.W.2d 265, 270 (Mo. banc. 1984) (internal quotations and citations omitted). Missouri first recognized the existence of an implied warranty of habitability in King v. Moorehead, 495 S.W.2d 65, 75 (Mo. App. W.D. 1973). The court in King recognized that "the modern lease is

both a conveyance and a contract." Id. at 70. As such, the court recognized that other courts around the country had rejected the common law idea of caveat emptor and had instead "implied a warranty of habitability and fitness for use of the premises on principles of contract law."

200.     Plaintiff Burshteyn and Sara Burshteyn were thereby subjected to inadequate housing conditions.

201.    Defendants hold "superior knowledge" of the premises and its potential defects.

202.    Dangerous and/or unsafe conditions on the premises materially affected the life, health and safety of the Defendants' tenants Yefim Burshteyn and Sara Burshteyn.

203.    Defendants failed to maintain proper sanitation and proper maintenance and
        defied
the objective of ensuring adequate housing.

204.     Defendants refused to attempt arranging alternative accommodations for the Burshteyns after bed bugs were discovered and before the extermination occurred.

205.    Plaintiffs incurred losses and damages, including reasonable legal fees and costs, as a direct and proximate result of the Defendants' actions or inactions.

WHEREFORE, Plaintiffs pray judgment against Defendants, in an amount in excess of TWENTY-FIVE THOUSAND DOLLARS ($25,000) which is fair and reasonable under the facts and circumstances, pre-judgment and post-judgment interest at the statutory rate of 9%, legal fees, costs and such further relief as the Court may deem just and proper.

## COUNT VII. YEFIM BURSHTEYN AGAINST DEFENDANTS - BREACH OF COVENANT OF GOOD FAITH AND FAIR DEALING

**206.**    Plaintiffs incorporates paragraphs 1 through 205 as if fully stated herein.

207.    Defendants failed to perform as agreed under the terms of the Lease and failed to provide adequate and non-discriminatory terms and conditions of rental, proper accommodations and personnel, deliver services, timely conduct repairs and bed bug treatment.

208.    Defendants breached its duties to the Burshteyns and affirmatively failed to cooperate with the agents appointed by the Burshteyns to ensure adequate communications, English translations, performance under the Lease and achievement of the expected benefits.

209.    Defendants failed to adhere to the fundamental rules of good faith and fair play between the parties implied in every transaction and exercised a judgment conferred by their dealings with tenants in such a manner as to evade the spirit of the transactions or so as to deny tenants the expected benefit of said dealings. Restatement (Second) of Contracts ¶ 205 (1981).

210.    Defendants had an obligation to act in good faith and deal fairly with Defendants In that: (a) Each party must act with good faith toward the other; (b) Each party in the relationship must act with fairness toward the other; (c) Neither party would take any action to unfairly prevent the other from obtaining the benefits of the relationship; (d) Plaintiff should comply with its own representations and all applicable laws in dealing with Defendants; and (e) Plaintiff would give Defendants' interests as much consideration as it gave its own interests and not refuse performance in business-like manner.

211.    Defendants acted in bad faith and breached the covenant of good faith and fair dealing by: (a) failure to adhere to its fundamental obligations; (b) failure to ensure proper and timely repairs, bed bugs inspection and treatment; (c) failure to provide properly trained personnel and equipment; (d) failure to timely credit the Burshteyns due to Defendants' and their agents negligence and/or lack of performance.

212.     By reason of the above, Defendants breached the fundamental rules of good faith and fair play implied in every transaction and are not entitled to rent payments or reduced payments from the Burshteyns.

WHEREFORE, Plaintiffs pray for a judgment in their favor and against Defendants, that the Court award Plaintiffs damages, pre-judgment and post-judgment interest at the statutory rate of 9%, legal fees, costs and such further relief as the Court may deem just and proper.

## COUNT VIII. PLAITIFFS AGAINST DEFENDANTS - CLAIM FOR CONTRIBUTION

**213.**     Plaintiffs incorporates paragraphs 1 through 212 as if fully stated herein.

214.     Plaintiffs state that claims and damages alleged by Plaintiffs herein were directly and proximately caused by Defendants' and their agents' and employees' actions or inactions.

215.     Pleading hypothetically, and in the alterative, Plaintiffs state that if the Burshteyns or any of the Plaintiffs were found liable to Defendants, including but not limited to purported door damages and repairs, Plaintiffs are entitled to contribution from Defendants whose actions or inactions caused and/or contributed to cause Plaintiffs' alleged damages, claims, and losses.

WHEREFORE, Plaintiffs pray that judgment be entered in Plaintiffs' favor and against Defendants, in an amount based on the relative culpability of Defendants' employees and agents as may be determined by the finder of fact, for costs and attorney fees herein and for such punitive damages as may be just in the premises to deter such Defendants' conduct in the future, and such other relief as the Court deems just and proper.

## COUNT IX. PAINTIFFS AGAINST DEFENDANTS -- VICARIOUS LIABILITY/NEGLIGENT HIRING, TRAINING AND SUPERVISION

**216.**     Plaintiffs incorporates paragraphs 1 through 215 as if fully stated herein.

217.     James Deutsch, Elisabeth Wallace, Richard Alport, Josh Corson, Scott Malin, Joan Denison, Jacqueline Taylor, Scott Jannings and Tanya Lin are Defendant's agents and officers, directors and/or employees.

218.     Jim Kern is a former employee and agent of the Defendant.

219.     At all times relevant hereto, James Deutsch, Elisabeth Wallace, Richard Alport, Josh Corson, Scott Malin, Joan Denison, Jacqueline Taylor, Scott Jannings, Tanya Lin and Jim Kern acted in the scope of their employment or engagement by Defendants.

220.     Said above persons acted within the scope of their agency and authority.

221.     Jim Kern had a duty to report this occurrence to Defendants' management.

222.     Defendants knew that Yefim Burshteyn sustain physical injuries and damage to the door as a direct and proximate result of actions or inactions by Jim Kern.

223.     Defendants' representatives Jacqueline Taylor, Scott Jannings and Tanya Lin were present when Yelena Davydenko heard Yefim's voicemail and stated it was not a threat.

224.     During the meeting with Faina German on May 12, 2017, Tanya Lin stated that Yelena Davydenko heard Yefim's voicemail and determined same was a threat.

225. Jacqueline Taylor, Scott Jannings and Tanya Lin knew that Tanya Lin's assertions were untrue.

226.  Jacqueline Taylor and Scott Jannings failed to controvert Tanya Lin's untrue statements.

227.     Defendants issued Notices of Violations in disregard of conflicting evidence.

228.     Defendants failed or refused to make Yefim Burshteyn whole.

31

229.    In aforesaid actions of James Deutsch, Elisabeth Wallace, Richard Alport, Josh Corson, Scott Malin, Joan Denison, Jacqueline Taylor, Scott Jannings, Tanya Lin and Jim Kern and other Defendants' agents, they failed to conform to the applicable standard of care of an ordinary prudent person in similar circumstances, in a manner it hired and/or supervised its agents with respect to the work they performed through Defendants.

230.    Defendants failed to properly supervise its employees or agents, impose responsibilities on its staff, by tolerating poor performance and misrepresentations by its agents and representatives, and showed pattern of inefficiency and neglect, malice and willful actions.

231.    Defendants engaged in negligent hiring, training and/or supervision and are vicariously liable.

232.    Defendants' said negligent hiring, training and/or supervision of its employees and agents with respect to the work they performed for Defendants was a proximate cause of the losses and other damages suffered by the Plaintiffs and of the harm to the community.

WHEREFORE, Plaintiffs respectfully request that this Honorable Court awards to Plaintiffs damages, costs and attorney fees and any punitive damages as may be just and reasonable to deter such Defendants' conduct in the future, and for other and further relief that is just and proper.

## COUNT X. PLAINTIFFS AGAINST DEFENDANTS - ABUSE OF PROCESS

**233.**    Plaintiffs incorporates paragraphs 1 through 232 as if fully stated herein.

234.    Defendant CHAI previously utilized the three-per-year lease violations terms in

their eviction case No. 15SL-AC 17384-01 against the Burshteyns in St. Louis County, which
Defendant CHAI dismissed without prejudice in January 2017 and did not refile within one year.

235.    On May 31, 2017, Defendants delivered two Notices of alleged Lease Violations
to the Burshteyns.

236.    Defendants knew that Yefim Burshteyn and Faina German are Jewish and
American citizens who have unfettered rights to exercise their free expression in connection with
their national origin, ethnicity, ancestry and religion

237.    Yefim Burshteyn and Faina German wrote to the Jewish Federation of St. Louis,
and thereafter attempted to get an appointment to discuss their treatment by Defendants.

238.    Defendants in writing characterized the attempts by Yefim Burshteyn and Faina
German to gain an appointment to discuss their grievances against the Defendants as "harassment
of the Jewish Federation" and demanded that they should not harass the Jewish Federation.

239.    Defendants made an illegal, improper, perverted use of process, neither warranted
nor authorized by the process, with illegal purpose in exercising such illegal, perverted or improper
use of process.  *Ritterbusch v. Holt*, 789 S.W.2d 491, 493 (Mo. 1990).   The process was used to
accomplish an unlawful end, to compel Plaintiffs to do something they could not be legally
compelled to do, which is perverted and improper use of process.

WHEREFORE, Plaintiffs respectfully request that the Court adjudge and award to
Plaintiffs all damages, to be determined at trial, in excess of $25,000, award to Plaintiffs all costs
and attorney fees, and prays for such other and further relief as is just and proper under the
premises.

33

## COUNT XI. PLAINTIFFS AGAINST DEFENDANTS -- ACCOUNTING.

**240.** Plaintiffs incorporates paragraphs 1 through 239 as if fully stated herein.

241. Defendants are the participants in programs and activities receiving financial assistance from HUD's Community Development and Block Grant Program.

242. Under Missouri law the usual elements of an accounting are "(a) the need of discovery, (b) the complicated nature of the accounts, (c) the existence of a fiduciary or trust relationship, and (d) the inadequacy of legal remedy." *Iva Kalberloh, Administratix of the Estate of William Floyd Denney v. Shady Stewart, Jr. et. al*., 378 S.W. 2d 820, 824 (Mo. App. 1964).

243. Due to lack of social services for years, with Tanya Lin being the only social service provider at CHAI, the Burshteyns and Plaintiff Yefim Burshteyn were not included into the Defendants' determination of their eligibility for the HUD financial assistance programs.

244. Plaintiff Faina German was expressly demanded and directed by the Defendants to pay for certain expenses for which the Burshteyns might have been eligible had Defendants adequately processes their requests for eligibility under the HUD financial assistance programs.

245. Defendants made said express demands to Plaintiff Faina German on the record, including but not limited to on May 12, 2017, at the meeting with Defendants, in connection with the temporary relocation of the Burshteyns prior to and during bed bugs extermination.

246. There exists need for discovery to ascertain the Burshteyns' eligibility and lost services and benefits due to the lack of social and translation services to the Burshteyns.

247. The details of the Defendants' participation in the HUD financial assistance programs are of complicated nature.

248.     Defendants had an inadequate legal remedy available to them under the law be entitled to an accounting from Defendants.

249.     In addition or in the alternative, a fiduciary relationship existed between the Defendants as the participants of the HUD financial assistance programs, on the one hand, and the Burshteyns on the other hand.

WHEREFORE, Plaintiffs respectfully request that the Court award a relief in equity to Plaintiffs and order the Defendants' to provide full and accurate accounting for all social services and programs with the use of the HUD financial assistance for which the Burshteyns were eligible and pray for such other and further relief as is just and proper under the premises.

## COUNT X.  PLAINTIFFS AGAINST DEFENDANTS -- PUNITIVE DAMAGES

**250.**     Plaintiffs incorporates paragraphs 1 through 249 as if fully stated herein.

251.     Certain of Defendants' actions and inactions were willful, deliberate acts, aimed at circumventing Plaintiffs' rights, in violation of Defendants' obligations and applicable laws.

252.     Said willful actions or inactions included, but are not limited to, Defendants' failure to inquire into the actions or inactions of Tanya Lin, whereas Defendants knew that Tanya Lin was untruthful about the facts related to her translations, including but not limited to Tanya Lin's statement during the meeting between Plaintiff German and Defendants on May 12, 2019.

253.     Said Defendants' actions were committed maliciously, willfully or wantonly in violation of laws and regulations, to warrant punitive damages. C.J.S. Damages, 230 (2000).

254.     Defendants' actions barred Plaintiffs from enjoying the benefits of the Burshteyn's lease relationship with the Defendants and from exercising their lawful rights and enjoying their

entitlements under the applicable laws.

255.    As a direct and proximate result of Defendants' actions, Plaintiffs suffered

ascertainable injuries and incurred the costs and legal fees in pursuing Plaintiffs' claims herein.

WHEREFORE, Plaintiffs respectfully request that this Court award to the Plaintiffs

damages in excess of $25,000, costs, legal fees and such punitive damages as may be just to

deter such Plaintiff's conduct in the future and for other relief as the Court deems just and proper

in the premises.

Respectfully submitted,

Natalia D. McKinstry, 52453MO

1000 A Geyer Avenue

St. Louis, Missouri 63104

(314) 621-8006 (phone)

mckinstrylaw@yahoo.com

Natalia McKinstry, LLC

Attorney for Plaintiffs

## CERTIFICATE OF SERVICE

The undersigned certifies that a copy of the foregoing was served by the courts' system to
_____, attorneys for Plaintiff, this ____th day of April, 2019.