**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF MISSOURI**
**EASTERN DIVISION**

YEFIM BURSHTEYN and )
FAINA GERMAN, )
)
    Plaintiff(s), )
)    Case No. 4:19-cv-00830-SRC
    vs. )
)
COMMUNITY HOUSING )
ASSOCIATION, INC. and )
COMMUNITY HOUSING )
MANAGEMENT CORP., )
)
    Defendant(s). )

## MEMORANDUM AND ORDER

This matter comes before the Court on the Partial Motion to Dismiss [21] of Defendants Community Housing Association, Inc. and Community Housing Management Corp. Plaintiffs oppose the motion. For the reasons set forth below, the Court grants the motion, in part, and denies the motion, in part.

## I.    BACKGROUND

Plaintiff Yefim Burshteyn has rented and lived in an apartment at the Covenant House Apartments in St. Louis, Missouri for approximately thirteen years. Mr. Burshteyn resided in the apartment with his late wife, Sara Burshteyn, until her death in January 2017. Plaintiff Faina German is the adult daughter of the Burshteyns. The present action arises from a dispute, or more accurately a series of disputes, between the Burshteyns and Defendant Community Housing Association, Inc., the owner/landlord of Covenant House Apartments. Defendant Community Housing Management Corp. is the management company for Community Housing Association, Inc., which manages Covenant House Apartments. Plaintiffs allege that Defendants

participate in programs receiving federal financial assistance through the Community Development Block Grant Program of the U.S. Department of Housing and Urban Development (HUD).

Plaintiffs' twelve-count, 255-paragraph, and rather freewheeling Complaint alleges a broad array of misconduct by Defendants, both actionable and not. Essentially, Plaintiffs' allegations fall into four categories. First, Plaintiffs allege that one of Defendants' employees injured Yefim Burshteyn by forcefully opening the door to the Burshteyns' apartment while Mr. Burshteyn was standing behind the door. Second, Plaintiffs allege that Defendants failed to properly maintain the Burshteyns' apartment, including failure to identify and remedy a bed bug infestation within a reasonable time. Third, Plaintiffs allege that Defendants discriminated against them on the basis of both national origin (the Burshteyns are Russian-speaking immigrants) and physical disability. Finally, Plaintiffs allege misconduct by Defendants' employees, principally by the social services worker assigned by Defendants to provide translation services for the Burshteyns.

Based on these allegations, Plaintiffs assert both federal and state law claims against Defendants. In Count I of their Complaint, Plaintiffs' bring claims for discrimination on the basis of familial status and national origin, in violation of Section 804(b) of the Fair Housing Act. In Count II, Plaintiffs assert a state law claim for breach of lease. In Count III, Plaintiffs allege coercion, intimidation, and retaliation in violation of Section 818 of the Fair Housing Act. In Count IV, Plaintiffs assert claims for disability discrimination pursuant to the Fair Housing Act, Title III of the Americans with Disabilities Act, Section 504 of the Rehabilitation Act, and the Age Discrimination Act. Count V is a state law claim for negligence. Counts VI and VII are state law claims for breach of the implied warranty of habitability and the covenant of good faith

and fair dealing.  Count VIII is a claim for contribution.  In Count IX, Plaintiffs assert state law claims for vicarious liability, negligent hiring and retention, and negligent supervision.  Count X is a state law claim for abuse of process.  Count XI is a claim for equitable accounting, and Count XII is a claim for punitive damages.

Defendants' present Partial Motion to Dismiss does not seek dismissal of Plaintiffs' claims for negligence (Count V), discrimination based on national origin under the Fair Housing Act (included under Count I), or disability discrimination under the Fair Housing Act (included under Count IV).  Defendants move to dismiss all of Plaintiffs' remaining claims under Federal Rule of Civil Procedure 12(b)(6) for failure to state a claim.

## II.      STANDARD

Under Federal Rule of Civil Procedure ("FRCP") 12(b)(6), a party may move to dismiss a claim for "failure to state a claim upon which relief can be granted."  The notice pleading standard of FRCP 8(a)(2) requires a plaintiff to give "a short and plain statement . . . showing that the pleader is entitled to relief."  To meet this standard and to survive a FRCP 12(b)(6) motion to dismiss, "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face."  *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (internal quotations and citation omitted).  This requirement of facial plausibility means the factual content of the plaintiff's allegations must "allow[] the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."  *Park Irmat Drug Corp. v. Express Scripts Holding Co.*, 911 F.3d 505, 512 (8th Cir. 2018) (quoting *Iqbal*, 556 U.S. at 678).  The Court must grant all reasonable inferences in favor of the nonmoving party.  *Lustgraaf v. Behrens*, 619 F.3d 867, 872-73 (8th Cir. 2010).

When ruling on a motion to dismiss, a court must liberally construe a complaint in favor of the plaintiff. *Huggins v. FedEx Ground Package Sys., Inc.*, 592 F.3d 853, 862 (8th Cir. 2010). However, if a claim fails to allege one of the elements necessary to recovery on a legal theory, the Court must dismiss that claim for failure to state a claim upon which relief can be granted. *Crest Constr. II, Inc. v. Doe*, 660 F.3d 346, 355 (8th Cir. 2011). Threadbare recitals of a cause of action, supported by mere conclusory statements, do not suffice. *Iqbal*, 556 U.S. at 678; *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007). Rule 8 does not "unlock the doors of discovery for a plaintiff armed with nothing more than conclusions." *Iqbal*, 556 U.S. at 678-79. "A pleading that merely pleads labels and conclusions or a formulaic recitation of the elements of a cause of action, or naked assertions devoid of factual enhancement will not suffice." *Hamilton v. Palm*, 621 F.3d 816, 817 (8th Cir. 2010) (internal quotations omitted). Although courts must accept all factual allegations as true, they are not bound to accept as true a legal conclusion couched as a factual allegation. *Twombly*, 550 U.S. at 555 (internal quotations and citation omitted); *Iqbal*, 556 U.S. at 677-78.

Only a complaint that states a plausible claim for relief survives a motion to dismiss. *Iqbal*, 556 U.S. at 679. Therefore, a court must determine if the well-pleaded factual allegations "plausibly give rise to an entitlement to relief." *Id*. This "context-specific" task requires the court to "draw on its judicial experience and common sense." *Id*. at 679, 682. The well-pleaded facts must permit more than the "mere possibility of misconduct." *Id*. "Where a complaint pleads facts that are 'merely consistent with' a defendant's liability, it 'stops short of the line between possibility and plausibility of entitlement to relief.'" *Id*. at 678 (quoting *Twombly*, 550 U.S. at 557).

## III.    DISCUSSION

### A.    Count I – Discrimination in Violation of Fair Housing Act

In Count I, Plaintiffs assert a claim under Section 804(b) of the Fair Housing Act (FHA),

42 U.S.C. § 3604 *et seq*.  The FHA makes it unlawful:

> To discriminate against any person in the terms, conditions, or privileges of sale
> or rental of a dwelling, or in the provision of services or facilities in connection
> therewith, because of race, color, religion, sex, familial status, or national origin.

42 U.S.C. § 3604(b).  Plaintiffs allege that Defendants discriminated against the Burshteyns "in

the terms, conditions, or privileges of the rental of dwellings because of national origin and

familial status…."  Doc. 1 at ¶ 119.  Defendants move to dismiss Plaintiff's claim of

discrimination based on familial status *only*.  The FHA defines "familial status" as:

> [O]ne or more individuals (who have not attained the age of 18 years) being
> domiciled with—
>
> > (1) a parent or another person having legal custody of such individual or
> > individuals; or
> >
> > (2) the designee of such parent or other person having such custody, with the
> > written permission of such parent or other person.

42 U.S.C. § 3602(k).  Defendants argue that Plaintiffs' familial status claim should be dismissed

because Plaintiffs have not alleged that any person under the age of 18 lived with them at any

relevant time.  Plaintiffs allege that Yefim Burshteyn lived only with his late wife, Sara.  Doc. 1

at ¶¶ 7-8.

In Response to Defendants' Motion to Dismiss, Plaintiffs do not argue that their

Complaint sufficiently alleges a familial status claim under the FHA.  Because Plaintiffs have

not alleged familial status as the FHA defines that term, and because they have not opposed

Defendants' Motion to Dismiss their familial status claim, the Court grants Defendants' Motion

to Dismiss Plaintiffs' FHA claim of discrimination based on familial status.

### B.     Count II – Breach of Lease

Defendants also move to dismiss Plaintiffs' claim for breach of lease (Count II) for failure to state a claim. Under Missouri law, the elements of a prima facie case for breach of lease are: (1) the establishment of a valid lease, (2) mutual obligations from that lease, (3) lack of performance from the breaching party, and (4) damage to the non-breaching party. *Arnold Crossroads, LLC v. Gander Mountain Co.*, 471 S.W.3d 721, 723 (Mo. Ct. App. 2015). Regarding the first element, Plaintiffs allege that Yefim Burshteyn "for approximately thirteen years rents [sic] from Defendant…Apartment J203 at Millstone Campus Drive, St. Louis Missouri 63146." Doc. 1 at ¶ 7.

For purposes of Defendants' Motion to Dismiss, the Court assumes (without deciding) that Plaintiffs have adequately alleged the establishment of a valid lease. However, the Court finds that Plaintiffs have failed to plead the second element of a breach of lease claim, i.e., mutual obligations under the lease. *Arnold Crossroads, LLC*, 471 S.W.3d at 723. Plaintiffs have not alleged any express terms of the lease regarding Defendants' contractual obligations.[1] Nor have Plaintiffs appended a copy of the lease to their Complaint to be incorporated by reference.

In Response to Defendants' Motion to Dismiss, Plaintiffs apparently admit they do not know the terms of the alleged lease. Regarding their failure to plead any specific provisions of the lease, Plaintiffs assert that "[d]iscovery is needed to establish an applicable Lease(s) governing the relationships of the Burshteyns and Defendants." Doc. 31 at pg. 4. Nevertheless, Plaintiffs argue that they have adequately pleaded Defendants' "responsibilities under the Lease," *id.* at pg. 4, by alleging:

---

[1] In fact, Plaintiffs' Complaint includes only one reference to a specific provision of the lease. Plaintiffs allege "Defendants have a provision in the Lease agreement whereby three lease violations in one year may result in eviction of the tenant(s)." Doc. 1 at ¶ 33. Obviously, this allegation does not implicate any obligation on the part of Defendants.

> 28.     Defendants are responsible for renting and maintaining the building,
> including units and common areas of the premises which include Apartment J203
> located at 6 Millstone Campus Drive, St. Louis, Missouri 63146.

Doc. 1 at ¶ 28.  But nothing in that allegation connects Defendants' alleged obligations ("renting and maintaining the building") to the Burshteyns' lease.  The Court is left to surmise whether the alleged obligation is contractual, statutory, or derived from some other source.  Further, the allegation that Defendants "are responsible for renting and maintaining the building" fails to allege to *whom* the Defendants owed this responsibility.  In ruling on a motion to dismiss, the Court construes the allegations liberally in Plaintiffs' favor, *Huggins*, 592 F.3d at 862, and grants them the benefit of all reasonable inferences*, Lustgraaf*, 619 F.3d at 872-73.  Even under this deferential standard, the Court finds that Plaintiffs have failed to allege any obligation Defendants owed the Burshteyns under the lease.

Moreover, *even if* Plaintiffs adequately alleged mutual obligations under the lease (which they have not), Plaintiffs have not alleged lack of performance by Defendants of their alleged obligations under the lease.  Plaintiffs allege in Count II that the Burshteyns "sought to apply for a new apartment [with Defendant Community Housing Association, Inc.]" but were "not offered or denied that opportunity based on their national origin and due to their language limitations."  Doc. 1 at ¶ 138.  Denial of rental opportunities based on national origin may state a claim for discrimination under the FHA.  *See* Section III.A., *supra*.  But Plaintiffs have failed to allege that Defendants *breached the lease* by denying the Burshteyns rental opportunities.  Plaintiffs do not allege that the lease required Defendants to offer the Burshteyns future rental opportunities.

Finally, Plaintiffs argue that "[u]nlawful actions such as discrimination, coercion or retaliation are also lease violations."  Doc. 31 at pg. 4.  Plaintiffs have not alleged that any specific provision of their lease prohibits discrimination, coercion, or retaliation.  Instead, Plaintiffs apparently ask the Court to find that any allegation of discrimination under the FHA

necessarily states a claim for breach of lease. Plaintiffs cite no authority for this broad proposition. And at least one court in this Circuit has found the opposite. *See Grover-Tsimi v. Millpond Partners*, No. CIV 09-3544 JRT/SRN, 2010 WL 4979092 (D. Minn. Oct. 18, 2010), at *4 n.4 ("[N]othing in the FHA supports the claim that a violation of that federal anti-discrimination statute necessarily also constitutes a breach-of-contract claim under state law."). The Court finds that Plaintiffs have failed to allege all the elements of a prima facie case for breach of lease. Accordingly, the Court grants Defendants' Motion to Dismiss Count II.

**C.     Count III – Retaliation in Violation of Fair Housing Act**

Count III of Plaintiffs' Complaint asserts a claim for "coercion, intimidation and retaliation" in violation of the FHA. Section 818 of the FHA provides:

> It shall be unlawful to coerce, intimidate, threaten, or interfere with any person in the exercise or enjoyment of, or on account of his having exercised or enjoyed, or on account of his having aided or encouraged any other person in the exercise or enjoyment of, any right granted or protected by section 3603, 3604, 3605, or 3606 of this title.

42 U.S.C. § 3617. Unlawful conduct under this section includes "[r]etaliating against any person because that person has made a complaint, testified, assisted, or participated in any manner in a proceeding under the Fair Housing Act." 24 C.F.R. § 100.400(c)(5). To state a claim for retaliation under § 3617, a plaintiff must show that (1) he engaged in a protected activity; (2) defendants subjected him to an adverse action; and (3) a causal link exists between the two. *Wolf v. Hoene Ridge Subdivision*, No. 4:15CV1140 RLW, 2015 WL 8665406, at *3 (E.D. Mo. Dec. 11, 2015), *aff'd*, 669 F. App'x 345 (8th Cir. 2016).

Defendants move to dismiss Plaintiffs' FHA retaliation claim on the grounds that Plaintiffs have failed to identify any protected activity. Doc. 22 at pg. 7. After careful review of Plaintiffs' Complaint, the Court finds that only one allegation in Count II arguably alleges protected activity. Plaintiffs allege that "they reported Defendants' conduct to the HUD for

investigation." Doc. 1 at ¶ 117. Reporting alleged discrimination to HUD may constitute protected activity under the FHA. *See United States v. Edmunds*, No. 15-CV-2705 (JRT/TNL), 2016 WL 7670605, at *5 (D. Minn. Dec. 6, 2016).

However, even assuming Plaintiffs' reports to HUD constituted protected activity, Plaintiffs do not allege that Defendants were aware of the reports. Nor do Plaintiffs allege how any of Defendants' actions were taken in retaliation for their alleged report to HUD. Plaintiffs do even not allege when their report to HUD occurred, or whether it was before or after any actions taken by Defendants. *See* Doc. 1 at ¶ 117. In the absence of any such allegations, Plaintiffs' Complaint fails to state a claim for retaliation under the FHA. *See Jackson v. St. James Manor Apts.*, No. 4:06CV715, 2007 WL 2306916, at *2 (D. Neb. Aug. 8, 2007) (retaliation claim subject to dismissal where plaintiff failed to allege that defendants were aware of complaint or how actions taken were in retaliation for complaint). Plaintiffs have failed to plead any facts from which the Court could infer a plausible "causal connection" between the alleged protected activity and the acts of Defendants. *Id.* Plaintiffs have pleaded no facts indicating retaliatory intent. Their allegations amount to only "'naked assertion[s]' devoid of [further factual enhancement].'" *Iqbal*, 556 U.S. at 678.

In the absence of any facts indicating a causal connection between any protected activity and any adverse action, Plaintiffs' Complaint fails to state a claim of retaliation under the FHA. Accordingly, the Court grants Defendants' Motion to Dismiss Count III.

### D.      Count IV – Disability Discrimination

Count IV of Plaintiffs' Complaint alleges that Defendants "subjected Sara Burshetyn and Yefim Burshetyn to disability discrimination under the Fair Housing Act, the Americans with Disabilities Act, the Rehabilitation Act, and/or the Age Discrimination Act" and "violated the

provisions against disparate treatment and failed to accommodate under the Fair Housing Amendments Act of 1988." Doc. 1 at ¶ 149, 153. Defendants move to dismiss Plaintiffs' claims under the Americans with Disabilities Act, the Rehabilitation Act, and the Age Discrimination Act for failure to exhaust administrative remedies.[2]

In their Complaint, Plaintiffs allege violation of the "Americans with Disabilities Act" (ADA) without citation to any specific section or title. Defendants argue, correctly, that Title I of the ADA requires exhaustion of administrative remedies. *See McSherry v. Trans World Airlines, Inc.*, 81 F.3d 739, 740 n.3 (8th Cir. 1996). However, in Opposition to Defendants' Motion to Dismiss, Plaintiffs assert (for the first time) that their ADA claim is brought pursuant to ADA Title III. Doc. 31 at pg. 9 ("It is clear that ADA Title III…is applicable here"). Title III does not require exhaustion of administrative remedies. *McInerney v. Rensselaer Polytechnic Inst.*, 505 F.3d 135, 139 (2d Cir. 2007). However, ADA Title III does not allow for the recovery of monetary damages. *See Woods v. Wills*, 400 F. Supp. 2d 1145, 1163 (E.D. Mo. 2005) ("It is well established that individual claims for damages based on alleged disability discrimination in violation of Title III of the ADA are precluded, and injunctive relief is the only available remedy."). Plaintiffs do not seek injunctive relief in Count IV, or anywhere else in their Complaint. Accordingly, the Court grants Defendants' Motion to Dismiss Plaintiffs' ADA claim. *See Woods*, 400 F. Supp. 2d at 1163 (dismissing ADA Title III claim for failure to state a claim where plaintiff did not seek injunctive relief in complaint).

Plaintiffs also assert a claim in Count IV for disability discrimination in violation of the Rehabilitation Act. Doc. 1 at ¶ 153. Section 504 of the Rehabilitation Act of 1973 prohibits any

---

[2] Defendants do not argue that claims of disability discrimination under the FHA or Fair Housing Amendments Act (FHAA) require administrative exhaustion, Doc. 34 at pg. 5, and, therefore, do not move for dismissal of Plaintiffs' FHA or FHAA claims under Count IV.

"program or activity receiving Federal financial assistance" from discriminating on the basis of disability.  The statute defines "program or activity" as, *inter alia*, "all the operations of":

> [A]n entire corporation, partnership, or other private organization, or an entire sole proprietorship--
>
> (i) if assistance is extended to such corporation, partnership, private organization, or sole proprietorship as a whole; or
>
> (ii) which is principally engaged in the business of providing education, health care, housing, social services, or parks and recreation[.]

29 U.S.C. § 794(b).

Defendants argue that Plaintiffs' Rehabilitation Act claim is barred for failure to exhaust administrative remedies, citing *Gardner v. Morris*, 752 F.2d 1271 (8th Cir. 1985).  The Court finds *Gardner* inapposite.  *Gardner* involved a claim of employment discrimination in violation of § 501 of the Rehabilitation Act.  *Id.* at 1277. The *Gardner* Court determined that employment discrimination claims under the Act require exhaustion of administrative remedies, regardless of whether brought under § 501 or § 504.  *Id.* at 1279 n.7 ("Congress intended to require persons complaining of handicap discrimination in employment to exhaust administrative remedies before availing themselves of judicial remedies under the Rehabilitation Act.") (quoting *Smith v. United States Postal Serv.*, 742 F.2d 257, 262 (6th Cir.1984)).  Conversely, the Eighth Circuit has held that claims of § 504 disability discrimination outside the employment context do not require exhaustion of administrative remedies.  *See M.P. ex rel. K. & D.P. v. Indep. Sch. Dist. No. 721, New Prague, Minn.*, 439 F.3d 865, 867 (8th Cir. 2006) (holding plaintiff could sue school district for disability discrimination under § 504 without exhausting administrative remedies).  Thus, Plaintiffs were not required to exhaust administrative remedies before bringing their claim for disability discrimination under § 504 of the Rehabilitation Act.

Having determined that § 504 does not bar Plaintiffs' claim for failure to exhaust administrative remedies, the Court considers whether Plaintiffs have adequately pleaded the elements of a § 504 claim. To establish a prima facie case of disability discrimination under Section 504, the plaintiff must show: "(1) [he] is a qualified individual with a disability; (2)[he] was denied the benefits of a program or activity of a public entity receiving federal funds; and (3)[he] was discriminated against based on [his] disability." *M.P. ex rel. K. & D.P.*, 439 F.3d at 867 (quoting *Timothy H. v. Cedar Rapids Cmty. Sch. Dist.*, 178 F.3d 968, 971 (8th Cir. 1999)).

Plaintiff Yefim Burshteyn alleges that he is a disabled person. Doc. 1 at ¶ 88, 151. Plaintiffs allege that Defendants receive federal assistance through HUD. Doc. 1 at ¶ 4, 241. Plaintiffs further allege that Defendants failed to accommodate the Burshteyns when their apartment became infested with bed bugs, even though Plaintiffs qualified for the accommodation. *Id.* at ¶¶ 94-95. Specifically, Plaintiffs allege that Defendants "had apartments available to temporarily move Burshteyns [sic] for several days after the bed bugs were discovered but before extermination," but refused to do so. Doc. 1 at ¶ 157, 94.

"[C]ourts have interpreted § 504 as demanding certain 'reasonable' modifications to existing practices in order to 'accommodate' persons with disabilities." *Fry v. Napoleon Cmty. Sch.*, 137 S. Ct. 743, 749 (2017). "An accommodation is reasonable only if it is related to the accommodated individual's disability." *Peebles v. Potter*, 354 F.3d 761, 769 (8th Cir. 2004) (quoting *Allen v. Interior Const. Servs., Ltd.,* 214 F.3d 978, 982 (8th Cir. 2000)); *see also Huberty v. Washington Cty. Hous. & Redevelopment Auth.*, 374 F. Supp. 2d 768, 773 (D. Minn. 2005) (plaintiff must make a prima facie showing that the requested accommodation is (1) linked to her disability-related needs, (2) necessary to afford her equal opportunity to enjoy the benefit at issue, and (3) possible to implement). Here, Plaintiffs have failed to plausibly allege any

relationship between the requested accommodation and the disability.  It is understandable that the Burshteyns (or anyone) would desire temporary alternative housing while their own was infested with bed bugs.  But Plaintiffs have not alleged any facts showing that the Burshteyns particularly needed such accommodation because of their disability.  Thus, Plaintiffs have failed to allege that the Burshteyns were discriminated against "based on [their] disability."  *M.P. ex rel. K. & D.P.*, 439 F.3d at 867.  Accordingly, the Court grants Defendants' Motion to Dismiss Plaintiffs' § 504 claim in Count IV.

Finally, Plaintiffs assert a claim in Count IV for discrimination in violation of the Age Discrimination Act.  Doc. 1 at ¶ 153.  The Age Discrimination Act of 1975 "prohibit(s) discrimination on the basis of age in programs or activities receiving Federal financial assistance."  42 U.S.C. § 6101.  The Age Discrimination Act expressly requires exhaustion of remedies before civil suit may be filed.  *See* 42 U.S.C. § 6104(e)(2) ("No action described in paragraph (1) shall be brought ... if administrative remedies have not been exhausted."); 28 C.F.R. § 42.736(a) ("Upon exhausting administrative remedies under the [ADA], a complainant may file a civil action to enjoin a violation of the Act...."); 45 C.F.R. § 90.50 ("[A] complainant may file a civil action following the exhaustion of administrative remedies under the Act."); *see also Clark v. Iowa State Univ.*, No. 4:09-CV-00370, 2010 WL 11531381, at *4 (S.D. Iowa June 2, 2010) (dismissing Age Discrimination Act claim for failure to exhaust administrative remedies).  Plaintiffs do not allege that they exhausted administrative remedies.  Accordingly, the Court grants Defendants' Motion to Dismiss Plaintiffs' claim under the Age Discrimination Act.

### E. Count VI – Breach of Warranty of Habitability

Count VI of Plaintiffs' Complaint asserts a claim for breach of the warranty of habitability. To state a cause of action for breach of the implied warranty of habitability under Missouri law, a tenant must allege the following elements:

> (1) entry into a lease for residential property; (2) the subsequent development of dangerous or unsanitary conditions on the premises materially affecting the life, health and safety of the tenant; (3) reasonable notice of the defects to the landlord; and (4) subsequent failure to restore the premises to habitability.

*Chiodini v. Fox*, 207 S.W.3d 174, 176 (Mo. Ct. App. 2006) (citing *Detling v. Edelbrock*, 671 S.W.2d 265, 270 (Mo. banc 1984)).  Plaintiffs allege that Defendants breached the warranty of habitability by failing to repair an uncovered electrical outlet and by failing to remedy/exterminate a bed bug infestation in the Burshteyns' apartment.  Doc. 1 at ¶ 198.

Defendants do not argue that Plaintiffs have failed to adequately plead the first (valid lease) or third (notice to landlord) elements of a warranty of habitability claim.  And Defendants apparently do not dispute that the alleged bed bug infestation[3] constitutes a "dangerous or unsanitary condition[] on the premises materially affecting the life, health, and safety of the tenant." *Chiodini*, 207 S.W.3d at 176.  Plaintiffs allege that "[t]he Burshteyn's sleep was disrupted for over a month because they were in constant discomfort, especially Sara, in pain, itching and scratching herself from bed bug bites." Doc. 1 at ¶ 49.  Plaintiffs further allege that Sara Burshteyn had multiple doctor's visits and a hospitalization due to the painful rash associated with bed bug bites.  *Id.* at ¶ 48, 63.  The Court finds that Plaintiffs have adequately

---

[3] Defendants do assert that an uncovered electrical outlet is not a "dangerous or unsanitary condition" because it does not render the living space uninhabitable.  Doc. 34 at pg. 6.  Defendants cite no authority for this assertion, which appears to be inconsistent with Eighth Circuit precedent.  *See Chiodini*, 207 S.W.3d at 177 ("exposed electrical wires clearly posed a risk" satisfying the third element of a warranty of habitability claim).  The Court need not reach the issue because it finds that the bed bug infestation alleged here satisfies the third element.

alleged that the bed bug infestation was a dangerous or unsanitary condition on the premises materially affecting the life, health, and safety of the tenant.

Defendants move to dismiss Plaintiffs' claim for breach of the warranty of habitability on the grounds that Plaintiffs have failed to allege Defendants' subsequent failure to remedy the alleged defects. Doc. 22 at pg. 9. Defendants argue that Plaintiffs have not alleged failure to remedy because Plaintiffs admit that Defendants scheduled extermination of the bed bugs for May 16, 2017. *Id.* An action for breach of warranty of habitability may lie even though the landlord eventually remedies the dangerous or unsanitary condition. *See Chiodini*, 207 S.W.3d at 177 (affirming trial court's finding that landlord breached implied warranty of habitability even though landlord successfully repaired defects). "A tenant must allow the landlord *reasonable time* to alleviate the defects." *Moser v. Cline*, 214 S.W.3d 390, 395 (Mo. Ct. App. 2007) (citing *Chiodini*, 207 S.W.3d at 177) (emphasis added). Plaintiffs allege that Defendants failed to remedy the bed bug infestation in a "timely and adequate manner." Doc. 1 at ¶ 198. Plaintiffs further allege that the Burshteyns endured the bed bug infestation for more than a month. *Id.* at ¶ 198. At the initial pleading stage, the Court finds these allegations sufficient to state a claim for breach of the implied warranty of habitability. The Court denies Defendants' Motion to Dismiss Count VI.

### F. Count VII – Breach of Covenant of Good Faith and Fair Dealing

Count VII of Plaintiffs' Complaint asserts a claim for breach of the covenant of good faith and fair dealing. Missouri law recognizes an implied duty of good faith and fair dealing in every contract. *Arbos v. Jefferson Bank & Trust Co., Inc.*, 464 S.W.3d 177, 185 (Mo. banc 2015). The covenant's purpose is to prevent one party from using an agreement's express terms to "deny the other party the expected benefit of the contract" or to "evade the spirit of the

transaction." *Hawthorn Bank and Hawthorn Real Estate, LLC v. F.A.L. Invest, LLC*, 449 S.W.3d 61, 66–67 (Mo. Ct. App. 2014) (internal quotation marks omitted). This implied covenant, however, is not "an overflowing cornucopia of wished-for legal duties; indeed, the covenant cannot give rise to obligations not otherwise contained in a contract's express terms." *Comprehensive Care Corp. v. RehabCare Corp.*, 98 F.3d 1063, 1066 (8th Cir. 1996) (quoting *Glass v. Mancuso*, 444 S.W.2d 467, 478 (Mo. 1969)).

Defendants move to dismiss Plaintiffs' claim for breach of the covenant of good faith and fair dealing for failure to state a claim, arguing that Plaintiffs have failed to allege Defendants exercised judgment conferred by the terms of the lease to evade the spirit of the lease. Doc. 34 at pg. 7. Plaintiffs concede that they bear the burden "to establish that Defendants exercised a judgment conferred by the express terms of the agreement in such a manner as to evade the spirit of the transaction or to deny Plaintiff the expected benefit of the contract." Doc. 31 at pg. 13. (citing *Koger v. Hartford Life Ins. Co.*, 28 S.W.3d 405, 412 (Mo. Ct. App. 2000)).

The Court has already found that Plaintiffs failed to allege any obligation Defendants owed the Burshteyns under the express terms of the lease. *See* Section III.B., *supra*. Plaintiffs have also failed to allege any judgment conferred on Defendants by the express terms of the lease. Because the covenant of good faith and fair dealing cannot give rise to obligations not otherwise contained in a contract's express terms, *see Comprehensive Care Corp.*, 98 F.3d at 1066, Plaintiffs' failure to plead express terms of the lease is fatal to their claim. *See Witengier v. U.S. Bank NA*, No. 4:16-CV-1855 (CEJ), 2017 WL 1429040, at *4 (E.D. Mo. Apr. 21, 2017) (dismissing action for breach of covenant of good faith and fair dealing for failure to state a claim because plaintiffs "provided no examples of how express terms were contravened"); *see also Smith v. Select Portfolio Servicing, Inc.*, No. 2:16-CV-04203-NKL, 2016 WL 4942029, at

*2 (W.D. Mo. Sept. 15, 2016) (dismissing action for breach of covenant of good faith and fair dealing because "the pleadings fail[ed] to cite any facts or specific contract terms" giving rise to the alleged obligation).  Accordingly, the Court grants Defendants' Motion to Dismiss Count VII for failure to state a claim.

### G.    Count VIII - Contribution

In Count VIII of their Complaint, Plaintiffs assert a "claim for contribution."  Doc. 1 at ¶¶ 213-15.  "Plaintiffs state that claims and damages alleged by Plaintiffs herein were directly and proximately caused by Defendants' and their agents' and employees' actions or inactions."  *Id.* at ¶ 214.  Defendants move to dismiss on the grounds that Plaintiffs' allegations do not support a claim for contribution.  Doc. 22 at pg. 8.

"To maintain an action for contribution, both the party seeking contribution and the defendant against whom contribution is sought must be tortfeasors, originally liable to the plaintiff-injured party."  *Union Elec. Co. v. Metro. St. Louis Sewer Dist.*, 258 S.W.3d 48, 55 (Mo. banc 2008) (quoting *Gramex Corp. v. Green Supply, Inc.*, 89 S.W.3d 432, 442 (Mo. banc 2002)); *see also Nestle Purina Petcare Co. v. Blue Buffalo Co. Ltd.*, No. 4:14 CV 859 RWS, 2016 WL 1579195, at *2 (E.D. Mo. Apr. 19, 2016) ("For a right to contribution to exist under Missouri law, defendants must be jointly and severally liable to the plaintiff for the same indivisible harm.").  Plaintiffs have not alleged that they are jointly and severally liable with Defendants for anything.  Accordingly, the Court grants Defendants' Motion to Dismiss Count VIII.

## H.    Count IX – Negligent Hiring or Retention and Negligent Supervision

In Count IX, Plaintiffs assert claims for "Vicarious Liability/Negligent Hiring, Training and Supervision."  Doc. 1 at ¶¶ 216-249.  Defendants move to dismiss Plaintiffs' claims for negligent hiring and negligent supervision for failure to state a claim.[4]

To succeed on a claim of negligent supervision, a plaintiff must plead and prove the following: (1) a legal duty on the part of the defendant to use ordinary care to protect the plaintiff against unreasonable risks of harm; (2) a breach of that duty; (3) a proximate cause between the breach and the resulting injury; and (4) actual damages to the plaintiff's person or property. *Davis v. Lutheran S. High Sch. Ass'n of St. Louis*, 200 S.W.3d 163, 165–66 (Mo. Ct. App. 2006). Further, "a negligent supervision claim requires as a necessary and indispensable element that the employee be acting *outside* of the scope of her employment."  *Nickel v. Stephens Coll.*, 480 S.W.3d 390, 402 (Mo. Ct. App. 2015) (emphasis added)*; see also Truck Ins. Exch. v. Prairie Framing, LLC*, 162 S.W.3d 64, 82 (Mo. Ct. App. 2005) ("negligent supervision by a master requires a showing that the servant was acting outside the course and scope of his employment"); *Hejnal v. U.S. Xpress, Inc.*, No. 4:17-CV-2557 CAS, 2018 WL 534376, at *4 (E.D. Mo. Jan. 24, 2018) ("Under Missouri law, it is beyond doubt that 'a negligent supervision claim requires as a necessary and indispensable element that the employee be acting outside of the scope of her employment.'" (quoting *Nickel*, 480 S.W.3d at 402).

Here, Plaintiffs have not alleged that any conduct by Defendants' employees was outside the scope of their employment.  In fact, Plaintiffs allege the opposite:

---

[4] Defendants do not move to dismiss Count IX in its entirety.  *See* Doc. 22 at pg. 18.  While Plaintiffs' Complaint does not anywhere use the term *respondeat superior*, the Court finds that Plaintiffs have adequately pleaded *respondeat superior* as an alternative theory of vicarious liability in Count IX.  *See Stanley v. City of Indep.*, 995 S.W.2d 485, 487 (Mo. 1999) ("Under respondeat superior, an employer is liable for damages from the misconduct of its employee acting within the course and scope of employment.").  Plaintiffs allege that "[a]t all times relevant hereto, [Defendants' employees] acted in the scope of their employment or engagement by Defendants." Doc. 1 at ¶ 219.

219.    At all times relevant hereto, James Deutsch, Elisabeth Wallace, Richard Alport, Josh Corson, Scott Malin, Joan Denison, Jacqueline Taylor, Scott Jannings, Tanya Lin, and Jim Kern acted in the scope of their employment or engagement by Defendants.

Doc. 1 at ¶ 219. The Court accordingly grants Defendants' Motion to Dismiss Plaintiffs' claim for negligent supervision.

"An employer may be directly liable for negligent hiring or negligent retention of an employee where the employer knew or should have known of the employee's dangerous proclivities and the employer's negligence was the proximate cause of the plaintiff's injury." *Higgenbotham v. Pit Stop Bar & Grill, LLC*, 548 S.W.3d 323, 331 (Mo. Ct. App. 2018). "To establish a claim for negligent hiring or retention, a plaintiff must show: (1) the employer knew or should have known of the employee's dangerous proclivities, and (2) the employer's negligence was the proximate cause of the plaintiff's injuries." *Gibson v. Brewer*, 952 S.W.2d 239, 246 (Mo. 1997).

Plaintiffs identify nine "agents, officers, directors and/or employees" of Defendants in Count IX: James Deutsch, Elizabeth Wallace, Richard Alport, Josh Corson, Scott Malin, Joan Denison, Jacqueline Taylor, Scott Jannings, and Tanya Lin. Defendants argue that Plaintiffs have failed to allege that any of these individuals had dangerous proclivities, that Defendants had notice of the dangerous proclivities, or that Plaintiffs suffered injury due to any dangerous proclivities.

With one exception, Plaintiffs do not allege that Defendants knew or should have known of any conduct by the identified individuals.[5] Plaintiffs' only allegations implicating Defendants' knowledge of dangerous proclivities are the following:

---

[5] Regarding Deutsch, Wallace, Alport, Corson, Malin, and Denison, the Complaint alleges nothing whatsoever apart from the fact that these individuals were officers and directors of the Defendants. Doc. 1 at ¶¶ 15-17. Thus, Plaintiffs plead nothing that can be construed as an allegation that these individuals possessed dangerous proclivities

37.     Tanya Lin threatened Yefim Burshteyn with physical harm by stating to him: "I will give you heart attack or worse [sic]."

38.     Yefim Burshteyn reported said threats by Tanya Lin to Defendant's management.

39.     Defendants did nothing to investigate and deter said conduct of Tanya Lin.

Doc. 1 at ¶¶ 37-39.

Assuming without deciding that these allegations satisfy the first element of a claim for negligent supervision (knowledge by employer of the employee's dangerous proclivities), the Court finds that Plaintiffs have failed to adequately plead the second element (the employer's negligence was the proximate cause of the plaintiff's injuries). *Gibson*, 952 S.W.2d at 246. "In bringing a claim for negligent retention, a plaintiff must show that an employee's misconduct not only caused injury but was consistent with a dangerous proclivity of the employee that has been exhibited by prior misconduct." *Higgenbotham*, 548 S.W.3d at 331. Plaintiffs have not alleged any relationship between Lin's dangerous proclivity, i.e., threats of physical harm, and any subsequent injury suffered by Plaintiffs. Plaintiffs have not alleged that Lin caused Plaintiffs any physical harm. Plaintiffs' only allegations of misconduct by Lin are that she (1) "neglected" the Burshteyns as their social services provider "and made errors in the social security administration paperwork of the Burshteyns," and (2) incorrectly translated a voicemail from Yefim Burshteyn and then falsely reported that the voicemail was threatening. Doc. 1 at ¶ 186, 224. The Court finds these allegations of misconduct simply too attenuated from the alleged dangerous proclivity to support a claim for negligent hiring or retention. *See Gaines v. Monsanto Co.*, 655 S.W.2d 568, 571 n.2 (Mo. Ct. App. 1983) (noting that plaintiffs could not

---

or that any such proclivities injured Plaintiffs. The Complaint arguably alleges isolated incidents of negligent conduct by Taylor, Kern and Jannings, but does not allege that Defendants knew or should have known of the conduct.

make out a prima facie case of negligent hiring or retention "solely by proving that the employer actually knew of the employee's criminal record" as "liability would depend on the nature of the criminal record and the surrounding circumstances"). Accordingly, the Court grants Defendants' Motion to Dismiss Plaintiffs' claim for negligent hiring or retention.

## I.        Count X – Abuse of Process

Defendants move to dismiss Plaintiffs' claim for abuse of process (Count X) for failure to state a claim. "The elements of an abuse of process claim are: (1) the present defendant made an improper, illegal, perverted use of process, which use was neither warranted nor authorized by the process; (2) the defendant had an illegal purpose in doing so; and (3) damage resulted." *Thompson v. City of St. Peters*, 220 F. Supp. 3d 975, 985 (E.D. Mo. 2016) (quoting *Crow v. Crawford & Co.*, 259 S.W.3d 104, 116 (Mo. Ct. App. 2008)). "No liability is incurred where the defendant has done nothing more than pursue the lawsuit to its authorized conclusion regardless of how evil his motive might be." *Crow*, 259 S.W.3d at 117 (Mo. Ct. App. 2008) (quoting *Muegler v. Berndsen*, 964 S.W.2d 459, 462 (Mo. Ct. App. 1998)).

A claim for abuse of process may only lie for process "which emanates from or rests upon court authority." *Crowe v. Horizon Homes, Inc.*, 116 S.W.3d 618, 623 (Mo. Ct. App. 2003) (dismissing abuse of process claim where alleged actions did not make use of process that emanated from or rested upon court authority). With one exception, Plaintiffs fail to allege, or even identify in their motion papers, any "process" emanating from or resting upon court authority that Defendants allegedly abused. In Opposition to Defendants' Motion to Dismiss, Plaintiffs argue that their abuse of process claim is predicated upon a 2015 unlawful detainer action brought by Defendants against the Burshteyns. Plaintiffs allege in Count X:

> Defendant CHAI previously utilized the three-per-year lease violations terms in their eviction case No. 15SL-AC 17384-01 against the Burshteyns in St. Louis

County, which Defendant CHAI dismissed without prejudice in January 2017 and did not refile within one year.

Doc. 1 at ¶ 234.  A spurious lawsuit brought for an illegal purpose may support an abuse of process claim.  *Diehl v. Fred Weber, Inc.*, 309 S.W.3d 309, 320-21 (Mo. Ct. App. 2010).  However, Plaintiffs have not alleged anywhere in their Complaint that the 2015 eviction lawsuit was spurious or unwarranted, or that Defendants brought the suit for an illegal purpose.[6]  Plaintiffs' allegation that Defendants dismissed the suit without prejudice does not establish that the suit was spurious, much less that it was brought for an illegal purpose.[7]  *See Thompson*, 220 F. Supp. 3d at 985 (stating elements of abuse of process claim).  The Court finds that Plaintiffs have failed to state a claim for abuse of process under Missouri law, and therefore grants Defendants' Motion to Dismiss Count X.

### J.      Count XI – Equitable Accounting

In Count XI, Plaintiffs assert a claim for equitable accounting.  To state a claim for equitable accounting, a plaintiff must plead (1) a need for discovery; (2) the nature of the accounts is complicated; (3) a fiduciary duty existed between the parties; and (4) plaintiff lacks an adequate remedy at law.  *Cook v. Martin*, 71 S.W.3d 677, 679 (Mo. Ct. App. 2002).  Defendant argues that Plaintiffs have failed to adequately plead any of the elements of a claim for equitable accounting.  Doc. 22 at pg. 15.

The Court finds that Plaintiffs have failed to plead sufficient facts to state a plausible claim for equitable accounting.  Specifically, Plaintiffs have failed to adequately allege that a

---

[6] In their Opposition brief, Plaintiffs argue that Defendants had no justification for bringing the 2015 suit by asserting numerous facts not alleged in the Complaint.  Doc. 31 at pg. 16-17.  In ruling on Defendants' 12(b)(6) motion to dismiss, the Court takes no notice of facts not alleged in the Complaint.

[7] In their Opposition, Plaintiffs concede that the Parties resolved the 2015 eviction lawsuit by settlement agreement, whereby the Burshteyns' continued tenancy was conditioned upon completion of a period of probation. Doc. 31 at pg. 16-17.

fiduciary relationship existed between Defendants and either of the Plaintiffs.[8]  Under Missouri

law, a fiduciary relationship consists of the following elements:

> (1) one party must be subservient to the dominant mind and will of the other party
> as a result of age, state of health, illiteracy, mental disability, or ignorance; (2)
> things of value such as land, monies, a business, or other things of value, which
> are the property of the subservient party, must be possessed or managed by the
> dominant party; (3) there must be a surrender of independence by the subservient
> party to the dominant party; (4) there must be an automatic and habitual
> manipulation of the actions of the subservient party by the dominant party; and
> (5) there must be a showing that the subservient party places a trust and
> confidence in the dominant party.

*A.G. Edwards & Sons, Inc. v. Drew*, 978 S.W.2d 386, 394 (Mo. Ct. App. 1998).[9]  In Count XI,

Plaintiffs allege that "Defendants are the participants in programs and activities receiving

financial assistance from HUD's Community Development and Block Grant Program."  Doc. 1

at ¶ 241.  Plaintiffs' only allegation regarding fiduciary relationship is the following:

> 249.    In addition or in the alternative, a fiduciary relationship existed between
> the Defendants as the participants of the HUD financial assistance programs, on
> the one hand, and the Burshteyns on the other hand.

*Id.* at ¶ 249.  Plaintiffs cite no authority for the proposition that Defendants' mere participation in

HUD programs makes them fiduciaries of the Plaintiffs as a matter of law.  Nor have Plaintiffs

alleged facts establishing the elements of a fiduciary relationship under Missouri law.  See *A.G.

Edwards & Sons*, 978 S.W.2d at 394.  Plaintiffs' allegations in Count XI amount to no more than

"[t]hreadbare recitals of the elements of [the] cause of action, supported by mere conclusory

statements."  *Iqbal*, 556 U.S. at 678.

---

[8] Because Plaintiffs have failed to adequately allege a fiduciary relationship, the Court need not reach the question of
whether Plaintiffs have adequately pleaded any of the remaining elements of a claim for equitable accounting.
[9] There are instances in which a fiduciary relationship exists absent the above elements, such as the attorney-client
relationship and the physician-patient relationship.  *A.G. Edwards & Sons, Inc.*, 978 S.W.2d at 394.  None of the
exceptions recognized under Missouri law are applicable here.

Because Plaintiffs have failed to adequately allege a fiduciary relationship between Defendants and Plaintiffs, their claim for equitable accounting is not plausible under Missouri law. Accordingly, the Court grants Defendants' Motion to Dismiss Count XI.

**K.    Count XII – Punitive Damages**

In Count XII[10], Plaintiffs assert a claim for "Punitive Damages." Doc. 1 at ¶¶ 250-55. Defendants correctly argue that Missouri does not recognize a standalone cause of action for punitive damages. *Misischia v. St. John's Mercy Med. Ctr.*, 30 S.W.3d 848, 866 (Mo. Ct. App. 2000) ("A punitive damage claim is not a separate cause of action, it must be brought in conjunction with a claim for actual damages.") (quoting *Klein v. General Electric Co.*, 728 S.W.2d 670, 671 (Mo. Ct. App. 1987)); *see also Hurley v. Smithway Motor Express*, No. 4:05cv901, 2006 U.S. Dist. LEXIS 76095, at *5 (E.D. Mo. Oct. 19, 2006) ("In Missouri, punitive damages do not and cannot exist as an independent cause of action; they are mere incidents to the cause of action and can never constitute the basis thereof.").

> The request for punitive damages need not be plead in a separate count, but it must nevertheless appear from the complaint, either by direct averment or from necessary inference, that the act occasioning the damages was done maliciously or was the result of the willful misconduct of the defendant or of that reckless indifference to the rights of others which is equivalent to an intentional violation of them, at least where the wrongful act does not in itself imply malice.

*City of Greenwood v. Martin Marietta Materials, Inc.*, 299 S.W.3d 606, 627 (Mo. Ct. App. 2009) (internal citations omitted). While a party may not seek punitive damages as an independent cause of action, a party may plead punitive damages in counts separate from the counts seeking actual damages. In each count, from Counts I through XI, Plaintiffs plead a claim for actual damages and incorporat all counts into Count XII, sufficiently stating a claim for punitive damages. Doc 1 at ¶ 250. The Court denies Defendant's Motion to Dismiss as to Count XII.

---

[10] This Count is incorrectly labeled as a second "Count X" in Plaintiffs' Complaint.

Accordingly,

**IT IS HEREBY ORDERED** that Defendants' Partial Motion to Dismiss [21] is GRANTED in part and DENIED in part as follows:

Count I – Plaintiffs' claim for discrimination based on familial status under the Fair Housing Act is dismissed without prejudice.

Count II of Plaintiffs' Complaint (Breach of Lease) is dismissed without prejudice.

Count III of Plaintiffs' Complaint (Coercion under the Fair Housing Act) is dismissed without prejudice.

Count IV – Plaintiffs' claim for discrimination under the Americans with Disabilities Act is dismissed without prejudice. Plaintiffs' claim for discrimination under the Age Discrimination Act is dismissed without prejudice. Plaintiffs' claim for disability discrimination in violation of the Rehabilitation Act is dismissed without prejudice.

Defendants' motion to dismiss Count VI (Breach of Warrant of Habitability) is DENIED.

Count VII of Plaintiffs' Complaint (Breach of Covenant of Good Faith and Fair Dealing) is dismissed without prejudice.

Count VIII of Plaintiffs' Complaint (Contribution) is dismissed without prejudice.

Count IX – Plaintiffs' claim for negligent supervision is dismissed without prejudice. Plaintiffs' claim for negligent hiring or retention is dismissed without prejudice.

Count X of Plaintiffs' Complaint (Abuse of Process) is dismissed without prejudice.

Count XI of Plaintiffs Complaint (Equitable Accounting) is dismissed without prejudice.

Defendants' motion to dismiss Count XII (Punitive Damages) is DENIED.

**IT IS FURTHER ORDERED** that Defendants' alternative [21] Motion for More Definite Statement as to Count III of Plaintiffs' Complaint is DENIED, as moot.

So Ordered this 3rd day of February, 2020.

**STEPHEN R. CLARK**
**UNITED STATES DISTRICT JUDGE**